## No. 14,064.

### JESSE W. KING ET ALS. VS. J. D. KING AND OTHERS.

#### SYLLABUS.

1. An heir cannot be compelled to collate an amount expended to send him to school, although he failed to avail himself of the opportunity offered him to attend school. Art. 1244 C. C.
2. Collation is not due of amounts expended to defend a minor against whom a criminal charge had been brought.
3. The cardinal object of the *collatio bonorum* is equality in the partition, in order to prevent jealously and bickering among heirs about property. The law would fail of its object if heirs were made to collate unless upon ample proof that collation is due.
4. An heir by whom collation is due for the amount of a note bearing interest is a debtor for principal and interest for collation.
5. Grandchildren who elect to take as heirs must return to the mass a legacy left them in satisfaction of their portion.
6. Grandchildren apparently in the attitude of having accepted a succession and the gifts made to their father by their grandfather cannot claim from their grandparents' succession without regard to the benefit received by themselves from the gifts they wish to ignore.
7. Collation is due by grandchildren to grandparents for care and board and lodging. They are entitled to credit for work done by them for their grandparents.
8. A legacy not left to forced heirs as an extra portion must be returned to the mass of the succession, in view of the fact that it is evident the testator intended it in full satisfaction of all claims as heirs.
9. Heirs cannot exercise the rights of creditors against their co-heirs in order to benefit themselves by showing an attempt of a co-heir to shield his share of inheritance from the pursuit of his creditors.
10. An heir who admits that the amount represented by his note is due as collation, cannot sustain prescription as a bar to recovery of interest on a note bearing interest.

##### ON REHEARING.

1. The heir having admitted an indebtedness to the succession growing out of joint venture is debited.
2. Costs of a prior suit on appeal follow the judgment.

APPEAL from the Fourth Judicial District, Parish of Union—
*Pearce,* Special Judge.

*John B. Holstead,* for Plaintiffs, Appellees.

*Barksdale & Barksdale,* for Defendants, Appellants

The opinion of the court was delivered by BREAUX, J

On application for a rehearing by BREAUX, J

BREAUX, J. This was an action for a partition. Sarah N. King died in 1896, and Joseph G. King in 1898, leaving seven children, issue of their marriage, and two grandchildren, daughters of a predeceased son. Four of the heirs brought this suit for a partition. Joseph G. King died testate and Sarah N. King died intestate. The will was duly probated and J. W. King was appointed executor.

Three of the heirs, namely, J. D. King and the grandchildren, brought suit against the executor for an accounting, and afterwards filed an opposition to his account. Their opposition was sustained to the extent of reducing the legacies left by Joseph G. King to the disposable portion.

The crop made by Joseph G. King after the death of his wife was, as asked in this opposition, decreed to belong to his succession, and the remainder of the property was decreed to belong to the community which had existed between Joseph G. King and Sarah N. King.

The judgment homologating this account has disposed of some of the issues and in consequence they are not before us on appeal, as no appeal was taken from that judgment.

In the partition suit now before us for decision (brought by Jesse W. King, Zylphia Hester, wife of John Hester, Bettie McCrary, wife of Robert McCrary, and Fannie Roberts, wife of Charles B. Roberts), against their co-heirs, it appears that the heirs do not disagree regarding the necessity of selling the property to effect a partition, except as to one of the places known as "Swamp" in the Parish of Morehouse. Plaintiffs ask that this place be sold; the defendants oppose the sale, and contend that it can be divided in kind.

There is a life policy forming part of the assets amounting to six thousand dollars. We understand that the amount has been collected

since the judgment appealed from was rendered and that as to this policy also there remains no issues to be decided by this court.

We may as well say now that we agree with the judge of the District Court that the "Swamp" place should be sold to effect a partition The testimony discloses that there are three hundred and fifty acres in this place; that it is a cotton farm and has on it improvements generally made on such farms; that it would not be possible to divide it in the number of shares corresponding to the number of heirs—that is, in eight equal parts, without materially diminishing its value. These facts are sufficient to justify the order of sale instead of an order to divide the place in kind. C. C. 1340.

We may also as well state here that the appellees' counsel in the brief interposes objection to that part of the decree appealed from which orders that the sale be made by the executor. In the brief it is stated, and the statement is not denied, that the executor is an absentee, besides he has delivered, or he is about to deliver all the property of which he may have the seizin to the heirs to be divided. Under these circumstances, the sale should be made by another authorized officer of the property to be sold at public auction.

This brings us to a consideration of the real issues of the case. The amount involved is not large.

Four of the heirs, plaintiffs, demand collations from the defendants in larger amounts than heretofore decreed, while defendants insist that plaintiffs and not they owe larger amounts. We pass only upon the contested items and leave the others, without comment, as disposed of in the judgment of the District Court.

We take up in the first place for decision the account of J. W. King (who is also the executor) in so far as he, as an heir, owes amounts to be collated. He is one of the plaintiffs in the suit before us for a partition. One of the claims heretofore rejected which the defendant contends should be collated by J. W. King is an item of eighty dollars expenses incurred by the late Joseph G. King, his father, to send him to school. This son was grown at the time, but not of age. He did not choose to remain at the school to which he was sent, but returned after a few weeks' absence from home. The purpose of the father in handing the money to his son for his schooling was not carried out. It may have been mis-spent by the minor, who is, none the less, not accountable, in view of his minority. Besides, the traveling expenses to the

school, at which he did not remain, may be considered in the character
of expenses for education, such as it may have been.

There is another amount which the defendants charge should be col-
lated by this heir; some two hundred and fifty dollars. We agree with
the district judge in not allowing this claim. The amount was not
large and was expended by the wayward son, who was a minor. It would
serve no purpose to set forth the wrongs charged to have been com-
mitted by this heir and place them under the garish light of publicity.

Defendants charge that this heir should be charged with the use of a
steam gin. We are not of the opinion that this item is sustained by
the testimony. The gin was operated for joint account of the deceased
and this son. The latter testified that he had received an amount,
whether for the joint account, or for his own after settlement, is not
shown.

The amounts for rent due by this heir as charged, and the value of
the property ordered to be collated, have every appearance of being cor-
rect. This heir avers that he worked for his father a long time after he
was twenty-one years old. He claims for the services rendered. The
testimony has not produced the conviction that this claim should be
allowed.

One of the defendants, the heir G. L. King, objects to collating the
amount of a note given by him to his father for one thousand dollars
some years ago, and he objects to paying eight per cent. interest on the
note, all as carried in the account which was approved in the District
Court. This heir admitted that he had received the amount as charged,
but stoutly denies the right of his co-heirs to recover interest thereon.

Ordinarily interest is not due on amounts brought to the mass by
collating heirs. But this is an exceptional case. This heir bound him-
self to pay interest. The question is not new in this jurisdiction. This
court held, though interest had been remitted (clandestinely, it is
true) to give an advantage to heirs, that it must be brought back to the
mass of the succession. LeBlanc vs. Bertant, 16th Ann. 298. This
heir having promised to pay this interest, we yield to the precedent
established.

Against this heir, plaintiffs set forth and contend that he used at
least twelve hundred dollars of his father's money, pretending to go to
school after he was of age, and that he should be charged with this
amount in addition to the amount found against him by the district
judge. This claim is made on the uncorroborated testimony of the ex-

ecutor. It is vague and indefinite, besides, being for more than five hundred dollars, cannot be considered as proved by the testimony of one witness without corroborating circumstance.

The account, as relates to collation due by Mrs. McCrary, one of the heirs, needs but little attention. Its correctness is not seriously disputed. Her admissions in the pleadings and her statements as a witness have properly been held as satisfactorily establishing amounts due by her. This is also true as relates to the correctness of items which Mrs. Roberts, another of the heirs, was ordered to collate.

Plaintiffs and appellees contend that Vada King and her sister, Mrs. Stella King Johnson, should be made to collate amounts which they claim were due by their late father, W. R. King, to their grandfather and grandmother; also certain benefits of which they were the recipients, while their father was living. The indebtedness of the father, which plaintiffs urge these grandchildren should collate, consisted of the value of seven bales of cotton and other property of little value, and also an amount as due for the use of the Morehouse place.

The indebtedness of these grandchildren, plaintiffs and appellees urge, consisted of one sum of two hundred dollars bequeathed to them in the will of the late J. G. King, and of one thousand dollars for twelve years' board and lodging furnished by the deceased to the late father and those two heirs.

Returning to a consideration of the claim against the father's succession for which plaintiffs contend these heirs are indebted, we take up, in the first place, the claim for cotton. It appears that the land of the late Jos. G. King, cultivated by W. R. King, was abandoned early in the crop season by the first laborer who undertook to make this crop, and that after the abandonment, the late father of these heirs, W. R. King, cultivated it, and made the seven bales which were disposed of as his own. It was not the cotton of the late Joseph G. King, and, therefore, not within the rule requiring forced heirs to collate. The co-heirs of these grandchildren (viz: their uncles and aunts) who were called with them to this inheritance were given credit for one sum of one hundred and ten dollars. These two heirs insist that they should not be made to return this amount to the mass, for the reason that grandchildren of a deceased and children of a predeceased father, coming to the partition of the grandfather's estate, with uncles and aunts, are not obliged to collate an onerous obligation due by their father.

We are not concerned with the theory, the correctness of which we have no disposition to question at this time, that as an independent proposition, heirs who inherit in their own right—*i. e.,* grandchildren who are called directly to an inheritance, and not by representation —are thus made heirs by the law, and not in any representative capacity. We have no particular fault to find with the reasoning of the court as an abstract proposition, in the decision rendered in McKenzie vs. Bacon, 40 Ann. 165. The case before us is special. These heirs have, for all we know, as heirs of their father's succession, the very property which was given by their grandparents to their father. We must decline to lay down a rule by which an heir might retain the very property he inherits, and at the same time receive, as an heir, as if he did not own the property at all. He is, to say the least, estopped until he proves that he has not accepted the succession of his father, and received as his own property, which his father received as a gift from the succession of his grandfather. In such a case as here, we must adhere to the opinion in Succession of Meyer, 44th Ann. 871.

It follows that this amount of one hundred and ten dollars was properly charged.

We take up the next disputed claim for collation brought against these grandchildren in their own right by their co-heirs. It consists, in the first place, of a charge for board and lodging for twelve years, they allege, for themselves and their father of one thousand dollars. Their father rendered services to their grandfather and grandmother which were fully worth the amount due for his board and lodging. He did some work on the place and was sufficiently useful, while residing with the grandfather and grandmother, to more than equal the value to him of his board and lodging.

His children, the grandchildren here, having lost their mother while they were quite young, were taken and cared for by their grandparents at their home. The evidence shows that the time they remained with their grandparents was less than twelve years. They, besides, worked and assisted in housekeeping not many years after they had been received as just mentioned. The preponderance of the testimony shows that their work was, as to its value, equal to their board and lodging. The District Court correctly allowed five hundred dollars for the care and attention which they received from their grandparents before they were able to work. We think that this is ample compensation. Generally, board and lodging do not give rise to a claim for which fathers and mothers may charge their children. As relates to grandparents, it is different. They are not under the same obligation to provide for

their grandchildren, and can, therefore, be heard to charge them for actual services rendered.

The plaintiffs ask that these two heirs, Vada and Stella, be made to collate two hundred dollars to the Succession of J. G. King bequeathed to them in the will of J. G. King, their grandfather. These two hundred dollars have been paid to them in accordance with the will which they accepted in satisfaction of all claims against the estate. With reference to the receipt given in full for all claims, we think it evident that they acted in error. This is the trend of the testimony which is uncontradicted and for that reason it does not occur to us that they should be held bound by their receipt.

An examination of the will of the late J. G. King satisfies us that he did not intend this legacy to be an extra portion, but in full payment of all claims which these heirs might have at his death. These heirs having elected to receive as heirs, they must return these two hundred dollars to the mass of the succession and remain content after having received their portion of the succession as heirs.

The plaintiffs seek to recover from the defendant, C. I. L. King, another heir, a larger amount than heretofore allowed by the District Court. The disputed items are a claim made by plaintiffs for a large amount, asserted rental value of property known as the "Swamp place" in Morehouse, cultivated by this heir for a number of years. The defendant claimed as a set-off, taxes and improvements placed on this farm.

The heir, C. I. L. King, said as a witness that before he and his brother stopped paying rent to his father on the Swamp place, the rental paid by him and his brother each year was five hundred dollars. After his father's death it was generally understood that five hundred dollars was a fair rental value. It is just to infer that the property was as valuable each year between the dates before mentioned. On this basis there can be no question that the two thousand dollars demanded by plaintiffs and appellees for rent, prior to J. G. King's death, is not excessive.

Perhaps plaintiffs' argument for a large sum would have great weight were it not that they have fixed the amount at two thousand dollars "or more" in their petition, and asked to have it collated. This heir had cultivated this farm since many years. When the father died he nevertheless bequeathed its use to him for the remainder of his son's life. This and the preponderance of the testimony, it seems to us, warrant the conclusion that the amount at first claimed by plaintiffs is

all that this heir should be required to collate in addition to $1500 due since J. G. King's death. We do not attach the importance to the words "or more" in the petition plaintiffs seek to have given to them. They are not too vague and indefinite to justify a judgment for a larger sum than that specifically claimed.

The last heir, in the order of the issues as presented, is J. D. King. who should be charged, plaintiffs aver, with the full amount acknowledged in a receipt given to his father. It appears that he signed this receipt for the purpose of shielding his portion of the prospective inheritance from his aged father's succession from the pursuit of his creditors. Although the act was fraudulent and censurable, there is no good reason for it to enure to the benefit of his co-heirs. It did not have the effect of changing the right of inheritance from this heir to his co-heirs. His creditors who are interested would have the right to complain, not the co-heirs. They are without right to become champions of creditors in order to become beneficiaries as heirs.

The items for the rent due to the late father and for property received from him, we think, are sustained by the evidence, and we have found no good reason to increase the amount, but, on the contrary, have found ground to make a reduction of one hundred and eighty-five dollars as follows: rent of Greer place we have reduced to sixty dollars a year; rent of Point place, we have reduced to thirty dollars a year; two mules, value one hundred and twenty dollars, one horse, value ten dollars.

Defendants filed a plea of prescription. In argument, this plea was referred to only in support of the defense of G. L. King against the claim urged by his co-heirs for eight hundred and eighty dollars interest accrued on his note of one thousand dollars. We have noted that this heir admitted having received one thousand dollars and having executed his note therefor which he consented to collate. This admission took the principal and interest out of prescription, even if there ever was any ground for the plea.

Plaintiffs and appellees contend that the testimony of Roberts, husband of one of the parties, and McCreary, was improperly ruled out by the District Court in so far as relates to the other co-heirs; that the rule which excludes the testimony of the husband does not apply to the latter. Be that as it may, if we were to consider this testimony before the court, we have not found after having read the narrative of their testimony annexed to the bill of exceptions that it sustains the contention of these parties. It does not show that a larger amount is

due than heretofore allowed, or that error has been committed in the decree.

The purpose of the law is to maintain equality among the heirs and carry out the intention of the *de cujus*. To maintain the one and establish the other is sometimes attended with considerable work and difficulty when the contention is general among the heirs. It is easy enough to raise issues in the course of settlement of a family account covering a period of years. One conceives the idea that his indebtedness is larger than it should be, another that his co-heir is made to account for less than he should. In all these contentions, courts can only hope to approximate the right and liability of each. Item after item was taken up by the District Court and considered in the light of the testimony. We have also examined and pondered over these items and have arrived at the conclusion that very little change should be made in the judgment.

For these reasons, it is ordered, adjudged, and decreed that the amount to be collated by J. D. King be reduced by one hundred and eighty-five dollars and that the children, Vada King and Stella Johnson, must return the two hundred dollars received by them as a legacy to the mass of the succession, and that another officer than the executor must be appointed to make the sale as auctioneer.

With these amendments, the judgment appealed from is affirmed. Costs of appeal to be paid by appellees, of the lower court by the succession.

### ON APPLICATION FOR A REHEARING.

BREAUX, J. We have considered the different grounds urged by the appellants in this case for a rehearing and have found no reason to change our original decree, save in two unimportant particulars which we have determined to make without a rehearing.

1st. We think that J. W. King owes the amount of two hundred dollars claimed by defendants and appellants. In the transcript made part of the record in this case J. W. King, as a witness, referred to this amount as a sum arising from the running of a gin for common account between himself and his father and said that he had years ago realized two hundred dollars as his share of the profits. In the evidence in the last transcript filed, this amount is referred to. Considering the testimony in the first and second transcripts in regard to the ginning, we think that this heir should be charged with these two hundred dollars

2nd. With reference to the costs of appeal in the prior appeal, *i. e.,* No. 13,779, plaintiffs and appellees having failed to maintain the appeal in the former case owe the costs of appeal and in the partition that charge for costs will accordingly be made.

The amounts being small and the court having considered that further argument is unnecessary the amendment to the extent above stated is made.

It is, therefore, ordered, adjudged, and decreed, that our former decree be amended by decreeing that two hundred dollars be charged to J. W. King, and that the account be amended by adding that amount to his debit as an heir in satisfaction of the amount before mentioned. The account of the executor is also amended by charging plaintiffs with the costs of the former appeal, being No. 13,779 on this docket.

With these amendments the judgment heretofore handed down remains, and rehearing is refused.