181 So. 867

**JUNG et al. v. STEWART et al.**
No. 34684.

May 2, 1938.

Rehearing Denied May 30, 1938.

Pierre D. Olivier, of New Orleans, for appellant Samuel B. Stewart, testamentary executor of Mrs. Rita J. Jung Stewart.

Louis B. Claverie, of New Orleans, for appellant Mrs. Rita L. Jung Stewart.

A. Giffen Levy, of New Orleans, for appellees Louis E. Jung, Mrs. Margaret Jung Sonnier, and Mrs. Ernest J. Develle.

FOURNET, Justice.

This is a partition proceeding between the heirs of Louis A. Jung, deceased, and the estate of his surviving widow, Mrs. Marie LeDossu d'Hebecourt Jung, deceased, involving property acquired during the community which existed between the decedents.

Louis A. Jung died testate in 1918. His succession was opened to probate, duly administered, the executor discharged, and by judgment dated June 7, 1920, his surviving widow, Mrs. Marie Azelie LeDossu d'Hebecourt Jung, was recognized as owner and sent into possession of an undivided half of the property acquired by him during his marriage to her, and (1) J. Charles Jung, (2) Theodore A. Jung, (3) Mrs. Rita Louise Jung, wife of Samuel B. Stewart, and (4) Mrs. Elizabeth Ambrosine Jung, widow of Ernest J. Develle, issue of said marriage, and (5) Louis E. Jung and (6) Mrs. Margaret Jung, wife of Marx R. Son-

nier (children of a predeceased son of said marriage, Henry L. Jung), were recognized as his heirs and, as such, sent into possession of the other half of the property, subject to the usufruct of the surviving widow. A full and complete description of the property appears in an inventory taken by W. W. Young, notary public, dated August 1, 1918, and comprised: (a) real estate; (b) shares of stock, and (c) other movable property. The inventory, which was signed by Mrs. Jung, surviving widow, J. C. Jung, T. A. Jung, Mrs. Stewart and Mrs. Develle (L. E. Jung and Mrs. Sonnier, being minors, did not sign), contains the following statement of the notary:

"That by an examination of the books kept by the decedent, it appears that he advanced, at various times during his life time, various sums as follows:

"1. To his son, Henry L. Jung and to the children of the said Henry L. Jung and subsequent to the death of the said Henry L. Jung, the sum of $7,485.71.

"2. To Charles J. Jung, the sum of $24,-738.07, as evidenced by the promissory note hereinabove fully described.

"3. To Theodore A. Jung, the sum of $6,-715.38, as evidenced by the promissory note hereinabove fully described.

"4. To Mrs. Elizabeth Ambrosine Develle, the sum of Two Thousand six hundred and seventy $2,670.00 dollars."

For the purpose of brevity, we shall hereafter refer to the surviving widow as Mrs. Jung; to the third named heir as Mrs. Stewart; the fourth named heir as Mrs.

Develle; the fifth named heir as L. E. Jung, and the sixth as Mrs. Sonnier.

On November 9, 1921, T. A. Jung sold to his mother his undivided one-tenth naked ownership of the property inherited from his father for the consideration of the assumption by her of his indebtedness to the community amounting to $6,715.36.

Subsequently, J. Charles Jung was adjudicated a bankrupt, and as his indebtedness to the succession of his father exceeded the value of the property he inherited from him, the trustee in bankruptcy abandoned all claims to the property. Upon a petition filed by Mrs. Jung, Mrs. Develle, Mrs. Stewart, L. E. Jung and Mrs. Sonnier, judgment was signed on November 23, 1922, decreeing J. Charles Jung to be without interest in the estate of his father and recognizing petitioners as the owners thereof.

Mrs. Jung died testate on the 11th day of February, 1935, and Samuel B. Stewart qualified as testamentary executor of her estate.

On April 1, 1936, Mrs. Develle, L. E. Jung and Mrs. Sonnier filed suit against the executor of Mrs. Jung's estate and Mrs. Stewart to effect a partition by licitation of the community property held in indivision by them and fully described in the inventory taken by Boussiere Rouen, notary public, in the succession of Mrs. Jung. Subsequently a new petition was substituted for the original petition by Mrs. Develle and Mrs. Sonnier, L. E. Jung having previously withdrawn as a party plaintiff in the proceedings, wherein they alleged that they, together with the estate of Mrs. Jung, Mrs.

Sonnier and L. E. Jung, were co-owners in indivision of certain real estate, stocks and movable property described in the inventory dated August 1, 1918, taken by W. W. Young, notary public, filed and homologated in the Succession of Louis A. Jung, and which property is also described in the inventory taken by Boussiere Rouen in the Succession of Mrs. Jung, and that they no longer desired to remain in indivision thereof; and prayed that the property be partitioned by licitation and that the parties be referred to Boussiere Rouen, notary public, for the purpose of completing the partition. Defendants accepted service of the petition, waived citation and submitted the matter to the court on the allegations of facts of the petition which they admitted, whereupon judgment was rendered accordingly.

All the property was sold pursuant to the judgment of the court and Mr. Rouen, the notary public appointed by the court to complete the partition, prepared his projet of the act of partition which was signed by Mrs. Stewart and the testamentary executor of the estate of Mrs. Jung, but plaintiffs and L. E. Jung declined to sign the same because of the inclusion therein of certain items of collation. A rule was taken against them to show cause why the projet prepared by the notary, a certified copy of which was filed in the record, should not be approved and homologated and distribution made accordingly.

In response to the rule, Mrs. Develle, L. E. Jung and Mrs. Sonnier filed oppositions to the homologation of the act of partition, which are similar except as to the amount

with which they are respectively charged in the proposed partition, and are substantially as follows: (1) That this is not a partition of succession effects but is one between co-owners and therefore there can be no collation in this proceeding; (2) that the amount charged against each of them as an acknowledged indebtedness is not correct. (3) They then interposed a plea of estoppel and res adjudicata against the proponents of the rule on the basis of the pleadings and their admissions supporting the judgment ordering the partition in which the issue of collation was not raised. (4) They further objected to the projet as being erroneous because (a) the sum of $407.13, being the proceeds of a stock dividend and rent of real estate which accrued and was paid to the executor of the Succession of Mrs. Jung after her death, was included as an asset of her estate; and (b) that in the share of the estate of Mrs. Jung is included the amount of $12,369.03, purporting to be the amount due by J. C. Jung, who was decreed not to have any interest in the property by judgment dated November 17, 1922.

The testamentary executor and Mrs. Stewart then pleaded that opponents, by their presence at the time of the taking of the inventory by Boussiere Rouen, notary public, without making any protest to the inclusion therein, as assets, the claims due by Mrs. Develle and the late Henry L. Jung and others, which inventory was thereafter duly homologated and by the judicial reference by the plaintiffs in their petition to the said inventory, as well as to the inventory taken by W. W. Young, notary public, as containing a true and full description of all the property owned in indivision between them, and by defendant L. E. Jung's admission of the correctness thereof, they are thereby estopped from contesting the correctness of these admissions and the judgment of the court rendered in accordance with the allegations of said petition and the admissions of the correctness thereof by the defendant is now final and is res adjudicata and conclusive as to all parties thereto with reference to all matters at issue in the case, including those contested claims for money.

There was also an opposition filed by Mrs. Stewart and the testamentary executor because there was included in the active mass the proceeds of the sale of a bedroom set which had been donated by Mrs. Jung to their minor daughter, Rose Mary.

The matter was tried and submitted on the issues as thus made up and there was judgment maintaining the oppositions of Mrs. Develle, L. E. Jung and Mrs. Sonnier and also the opposition of Mary Stewart, and accordingly the court ordered and directed the notary appointed to succeed Mr. Boussiere Rouen, who had died in the interim, to complete the partition between the parties in accordance with its judgment of May 1, 1936, and it amended the projet of the act of partition by Boussiere Rouen by striking and omitting from the active mass the items of $7,485.71 and $2,670 (items with which opponents were charged for collation), and $86 (sale price of the bedroom suite which was donated to Rose Mary Stewart), and by adding thereto the sum of $407.13. The item of $12,369.03 was

stricken from the proposed share of Mrs. Jung's succession. The court, in its judgment, failed to dispose of the pleas of estoppel and res adjudicata filed by Mrs. Stewart and the executor of Mrs. Jung's estate, but did so in a subsequent judgment rendered by it on a rehearing granted upon their application, overruling their pleas. The executor of Mrs. Jung's estate and Mrs. Stewart have appealed.

Without determining whether this is a partition between co-owners in indivision, in which collation is not allowed (Art. 1290, Rev.Civ.Code), or between co-heirs (descendants) in which collation is permissible inter sese (Art. 1242, Rev.Civ.Code), we shall first consider whether or not the officer or notary appointed to complete the partition has the right or authority to fix the collation due by the heirs, if any, when such collation is not fixed and regulated in the judgment ordering the partition and appointing him for the purpose of completing the same.

The Revised Civil Code provides that "the obligation of collating is confined to ·children or descendants succeeding to their fathers and mothers or other ascendants, * * *" (Art. 1235); that "when the judge has ordered the partition, and regulated the manner in which it shall be made, as well as the collations, if the case require it, he shall refer the parties to * * * a notary appointed by him to continue the judicial partition to be made between them," (Art. 1345); and that "if the partition is to be made between children or legitimate descendants inheriting from their father, mother or other ascendant, and a

collation is to be made, the officer shall cause the decree of the judge to be exhibited to him, by which it is decided whether the collation is to be made in kind, or by taking less," (Art. 1352).

As stated by Cross on Successions (Chas. E. Fenner Edition), p. 506: "The fundamental basis of the doctrine of collation is simply the presumption of law, that an ancestor intends absolute equality among his descendants in the final distribution of his property; that if he makes a donation to any one of them during his lifetime, it is merely an advancement d'hoirie or advance on his hereditary share, * * * and that he intends to reestablish equality among his descendants in the final partition of his estate. Such is collation, nothing more and nothing less; and the whole doctrine consists in formulating rules to ascertain this intention, to define the circumstances wherein the presumption does or does not operate, and to preserve the equality spoken of in the absence of its actual reestablishment by the ascendant, and in the absence of his express declaration of a contrary intention. * * *"

Under the heading "Settling the Accounts," Sec. 317, p. 530, the author states that "it should be observed that this accounting of debts and credits is not the same as fixing the collations, with which it has been confused; and that unless it is made with the consent of parties sui juris, *it must necessarily be based on the judgment ordering the partition* * * *." Then, under the heading "The Forming of the Mass," Sec. 318, p. 530, he further states that "before establishing the colla-

tions, C.C. art. 1274 (Rev.Civ.Code, art. 1352) requires the notary to cause the judgment of partition to be exhibited to him, in order that he may determine whether the collations are to be made in kind or by taking less; but unless the judgment does more than this, and fixes the collations due, there is nothing more than an idle ceremony. From the method of Articles 1274–1276 (Arts. 1352–1354, Rev.Civ.Code), it might be implied that the notary has authority to fix them himself; but he is only a ministerial officer without judicial power, and the fixing of collations is essentially a judicial act." (Italics ours.)

█ It is our opinion that the notary appointed to complete a judicial partition is without judicial authority and has no power to adjust or fix collation between descendants inter sese, his duties being purely ministerial, and in the performance thereof he must confine himself to the judgment of the court ordering the partition and regulating the manner in which it shall be made.

█ A review of the pleadings fails to disclose that any of the parties in this case have alleged that collation was due them, nor that any demand therefor by any heir had been made; nor do we find in the judgment of the court ordering the partition that any collation is to be made in the partition. On the contrary, the judgment is strictly in accordance with the allegations and prayer of plaintiffs' petition and admissions of the defendants, in which the pro-rata share of each party is definitely fixed. That judgment has not been appealed from.

The judgment appealed from is the one rendered on the rule to homologate the projet of the notary. We therefore conclude that the trial judge properly ordered stricken therefrom the items of collation the notary attempted to fix and regulate therein without the express authority of the court ordering the partition.

█ The fact that plaintiffs and the defendant, L. E. Jung, were present when the inventory of their mother's estate was made, in which was included the items now in dispute, and being the same which were included in an inventory taken in their father's estate by W. W. Young, notary public, to which reference was made in the pleadings for the express purpose of giving a complete description of the property to be partitioned, does not estop them from contesting the correctness thereof because the matter was never placed at issue. Moreover, they were not listed as assets in the latter inventory but merely as a memorandum by the notary of what was revealed on the books of the deceased and could not be construed as demanding collation by one descendant against another; that such was the case is conclusively shown by the absence of any reference to collation in the judgment of the lower court ordering the partition.

For the reasons assigned, the judgment of the lower court is affirmed.

O'NIELL, C. J., does not take part.