## DENNIG v. WHITWORTH et al.

### No. 5998.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 3, 1939.

Rehearing Denied Dec. 1, 1939.

Certiorari Denied Jan. 9, 1940.

Chandler & Chandler, and Horace M. Holder, all of Shreveport, for appellant.

Albert E. Bryson and Lunn & Trichel, all of Shreveport, for appellees.

HAMITER, Judge.

The petition in this proceeding, which is one in jactitation, recites that plaintiff, P. J. Dennig, has the corporeal possession as owner of a certain described 80-acre tract of land located in Caddo Parish, Louisiana, and that the defendants are slandering his title by asserting ownership of mineral interests therein. He prays that they be ordered to either disclaim any title to the property or to assert herein such rights as they may have.

The defendants answered, claiming the referred to mineral interests and deraigning their respective titles thereto. This had the effect of converting the proceeding into a petitory action, but such is of no importance in so far as the present consideration of the case is concerned.

The prescription of ten years, liberandi causa, was then specially pleaded by plaintiff in bar of defendants' asserted interests.

After hearing the merits of the case, the trial judge rejected plaintiff's demands and recognized defendants as the owners of the minerals which they claim. The plea of prescription was in effect overruled by the judgment. A well considered written opinion accompanied such decision.

This appeal, which was perfected by plaintiff, followed.

The controversy was tried on an agreed statement of facts. It appears therefrom that on April 11, 1922, one Julian E. Whitworth sold and conveyed the 80-acre tract in question to C. M. Christian, Sr., but reserved one-fourth of the mineral rights in and to the property. The reserved interest is the subject of this litigation.

The Gulf Refining Company, on August 25, 1927, secured an oil and gas lease on the entire tract, this having been executed jointly by the said Whitworth and Christian.

Julian E. Whitworth died on November 29, 1928, leaving a widow and several minor children. The youngest of these children was born May 13, 1914.

On April 12, 1930, C. M. Christian, Sr., sold the 80-acre tract to P. J. Dennig, plaintiff herein. The deed transferring the property was silent with reference to mineral rights.

The widow of Julian E. Whitworth, on April 8, 1931, conveyed her community interest in said reserved minerals to the May Realty Company, Inc., of Shreveport, Louisiana, of which Lawrence L. May, Sr., was president. This corporation, on April 30, 1931, sold one-half of such acquired interest to J. O. McFadin.

On or before December 31, 1933, the said May Realty Company, Inc., ceased to do business and became totally inactive. One of its stockholders was the Shreveport Real Estate Exchange, Inc., another corporation domiciled in Shreveport, which owned thirty-six shares therein.

Among the stockholders of the Shreveport Real Estate Exchange, Inc., were Lawrence L. May, Jr., and Alexander May, both of whom were minor children of Lawrence L. May, Sr. Their stock in such corporation had been acquired with funds belonging to them.

In order to avoid the effect of certain laws relating to holding companies, the Shreveport Real Estate Exchange, Inc., did, on July 21, 1937, distribute among its stockholders the thirty-six shares of the May

Realty Company, Inc., which it owned. Consequently, on that date the minors, Lawrence L. May, Jr., and Alexander May became the owners of stock in the last named company in the proportion of ten shares to each.

On August 15, 1938, the said May Realty Company, Inc., which had been inactive since on or before December 31, 1933, as before stated, was formally dissolved. Its only asset, the aforementioned mineral interest, was on that date transferred to its stockholders, two of whom were the May minors.

With reference to the corporation's dissolution and the transferring of its only asset, the agreed statement of facts recites:

"That although the May Realty Co., Inc., had been defunct or inactive for several years, no steps were taken leading to its formal dissolution until it was discovered that the corporation still owned the minerals involved in this suit. That up to that time there had been talk of dissolution, but it was considered cheaper to allow the state to forfeit the corporation's charter for nonpayment of taxes. That upon the discovery of the minerals, Lawrence L. May deemed it his duty to his minor children to dissolve the corporation to protect their interests. Therefore, the corporation was dissolved in order to attempt to interrupt prescription and to protect whatever rights the minors had in and to the minerals."

There has been no development or exploration of the minerals in and under the 80-acre tract since the reservation in question occurred in 1922.

The jurisprudence of this state is to the effect that where mineral rights are owned jointly by two or more persons, and one of the co-owners is a minor, the prescription of ten years, liberandi causa, by which such a servitude is extinguished, is suspended until the minor arrives at the age of majority; and such suspension affects the interests of both the minor and the major co-owners. Sample v. Whitaker, 172 La. 722, 135 So. 38. It is under this principle of law that we are to consider the facts of the instant controversy. The sole question presented for determination is whether or not the ten-year prescription period which began running in 1922 against the one-fourth mineral interest reserved by Julian E. Whitworth, was suspended on the occurrence of the dissolution of the May Realty Company, Inc., and the transfer of some of its minerals to the May minors.

In their brief, plaintiff's counsel discuss one other issue, this being the question of whether or not there was a suspension of prescription by the joint act of lease executed by Whitworth and Christian in 1927 in favor of the Gulf Refining Company; but defendants do not contend here that a suspension then occurred.

At the time of the death of Julian E. Whitworth on November 29, 1928, the ten-year prescription on the reserved one-fourth interest had been running six years, seven months, and eighteen days. By reason of Whitworth's surviving minor children, it was then suspended. This suspension continued until his youngest child attained the age of majority on May 13, 1935, at which time there was a resumption of the prescription's running. It was completed on the expiration of the remaining period of three years, four months and twelve days, or on September 25, 1938, unless a further suspension occurred on August 15, 1938, when the May minors were vested with title to their portion of the minerals.

The cases of Patton's Heirs v. Moseley, 186 La. 1088, 173 So. 772, and Martin Lumber Co. v. Hodge-Hunt Lumber Co., 190 La. 84, 181 So. 865, are relied on by plaintiff to sustain his position that the dissolving of the corporation and the transferring of its minerals to the minor stockholders admittedly for the purpose of interrupting prescription could not legally effect such an interruption. The Patton case presented a situation where mineral rights were sought to be conveyed to four co-owners, one of whom was a minor represented by a tutor. The defendants urged the minority of one of these transferees as suspending the running of the prescription which plaintiffs urged. The court found that the attempted transfer was neither supported by a valid consideration nor made in good faith. In the opinion of the case we find [186 La. 1088, 173 So. 774]:

"Neither was the agreement a giving in payment or a donation. It was a mere arrangement among the parties to preserve the mineral rights held by the alleged vendor from the running of prescription, using the minor's name for that purpose. If such a practice were sanctioned, it would enable the owner of a servitude to perpetuate the servitude without any action on the landowner's part by the simple device [or] under the guise of a sale placing a small undivided interest therein in the name of a minor before any prescriptive period would elapse.

* * *

"As we find that the deed relied on by defendants to interrupt the prescription of ten years liberandi causa pleaded by plaintiffs is a mere simulation, it cannot affect plaintiffs' rights and as to plaintiffs must be disregarded. Therefore, it is not necessary for us to pass upon the legality of the purported investment of the minor's funds."

In the cited Martin Lumber Company case donations of mineral rights were made to minors, and the question presented was whether or not the current of prescription was interrupted by those acts. It was concluded by the court that the donations were simulations, and it observed that a servitude cannot be continued "by manipulation or subterfuge." [190 La. 84, 181 So. 867.] The court pertinently said that:

"We are not confronted with a case where we are called on to protect a minor's interest but are confronted with a case wherein minors are interposed for the sole purpose of defeating the landowner of his rights and one where a corporation is seeking by manipulation and subterfuge to continue a servitude without developing or producing oil or making any effort to that end as was contemplated by the parties when the servitude was granted."

The matter of the interruption of the ten-year prescription liberandi causa affecting mineral rights was recently considered by the Supreme Court in Munn v. Wadley et al., 192 La. 874, 189 So. 561, 564. In its opinion, the court stated:

"The appellants' plea that the prescription of 10 years was suspended during the period from May 3, 1917, when the Porter-Wadley Lumber Company was dissolved, until April 28, 1931, when Miss Margaret Porter, who was a stockholder in the corporation, arrived at the age of majority, is founded upon the doctrine that by the dissolution of a corporation the title to its property is vested immediately in its stockholders. There is evidence in this record that such a doctrine prevails in the law of Arkansas, and there is some evidence to the contrary. But the mineral right that is in contest in this case is not personal property but real estate, and hence the law of Louisiana is the law which governs the transfer of the title. * * *

"According to the law of Louisiana the title to the property of a corporation does not pass immediately to the stockholders

by effect of the dissolution of the corporation. The title to real estate belonging to a corporation that has been dissolved and is in liquidation cannot be transferred to the stockholders, or to anyone else, without a written deed, made either by the corporation acting through its liquidating commissioner or commissioners, or by virtue of a judicial decree."

The court further said:

"Our conclusion on this subject is that, inasmuch as the title to the real right which is now in contest was never vested in the stockholders of the dissolved corporation, the fact that one of the stockholders, Miss Margaret Porter, was a minor did not suspend the prescription of 10 years, liberandi causa."

In the instant case, we are unable to conclude that the dissolution of the May Realty Company, Inc., and the transfer of the mineral rights to its stockholders, particularly to the minors, constituted a simulated arrangement such as was reprobated in the Patton and Martin Lumber Company decisions. Neither does the Munn case demand our holding that there was no suspension of prescription; for here, as distinguished from that cause, the title to the mineral interests was actually vested in the minors before the accrual of the ten-year period. At least one of those authorities, on the contrary, inferentially holds that under a factual situation such as we are now considering, where the actual conveyance of the mineral interests to the minors is made for the protection of their rights therein, a suspension occurs.

It is true that Lawrence L. May, Sr., who was president of the May Realty Company, Inc., and was principally responsible for the dissolution and conveyance transactions, acted at the time "in order to attempt to interrupt prescription." It is likewise true, however, that he also acted "to protect whatever rights the minors had in and to the minerals"; that the corporation had engaged in no business since the year 1933; that the dissolution had not been effected sooner because a forfeiture of charter for non-payment of taxes was deemed cheaper by the shareholders; and that when discovery was made of the corporation's ownership of the minerals, steps were taken leading to the formal dissolution.

The action employed by the father in behalf of his minor children was nothing more than a fulfillment of the duty that he owed to them as a prudent administrator of their estate. Considering the knowledge that he possessed regarding the minors' rights in those minerals and their possible loss by prescription, his failure to attempt the pursued course would have constituted a breach of the legal obligation owed to his children.

The May minors cannot be treated as parties interposed for the purpose of protecting major co-owners; for, as pointed out in the brief of defense counsel, their "interests in the May Realty Company, Inc., and therefore in these minerals, arose years ago when the matters involved in this suit were unthought of."

Of course, the major co-owners benefit with the minors by reason of the suspension of the prescriptive period; but this results from the law of prescription as it exists in this state and not from any simulated act or arrangement.

The judgment of the trial court is, in our opinion, correct, and it is affirmed.