67 So.2d 156

Succession of GOMEZ.

No. 40836.

July 3, 1953.

Bentley G. Byrnes, Edward A. Wallace, New Orleans, for plaintiffs-appellants.

Clarence Dowling, New Orleans, for executrix-appellee.

Charles A. Danna, New Orleans, for defendant-appellee.

HAWTHORNE, Justice.

This is a suit by three grandchildren of the deceased Mrs. William Gomez, children of a predeceased son, against the only surviving child, Mrs. Amelie Gomez Salatich,

and against the testamentary executrix for collation of certain sums given by Mrs. Gomez during her lifetime to her daughter Mrs. Salatich.

The facts disclose that Mrs. Salatich received from her mother from 1930 through 1946 sums of money which were alleged to total $19,200. This money was given to her in installments on or about the first day of each month through that period of time. The defense is that the monthly sums were for services rendered to the mother by the daughter, the defendant, or, in the alternative, that, if not for services, they were manual gifts and for that reason exempt from collation under the provisions of Article 1245 of the Civil Code.

This case is one for collation only and not for reduction of an excessive donation because it is conceded that the total amount received by Mrs. Salatich does not exceed the disposable portion of her mother's estate.

Defendant did not establish to the satisfaction of the district court that the sums so given were for services rendered, but the court nevertheless dismissed plaintiffs' suit on the theory that the money given to defendant in the form of checks was a manual gift and therefore exempt from collation under the provisions of the article of the Code above cited. From this judgment plaintiffs have appealed.

We agree with the district judge's conclusion that the defendant did not prove that the sums given were for services ren-

dered, but we cannot agree that manual gifts, as such, are exempt from collation.

The question of whether manual gifts are exempt from collation has never, so far as we can ascertain, been adjudicated directly by this court. In the jurisprudence, however, there are numerous cases in which collation of gifts which were in fact manual gifts was sought. In these cases no defense was made that the gifts were not subject to collation because they were manual gifts, but in practically all of them the defense was that the gifts were remunerative donations and for that reason were not subject to collation. The court in ordering collation in each case in which this defense was made considered the gifts only from the view of whether they were remunerative, and did not address itself to the manual gift problem as having any bearing on the question of whether the things given were subject to collation. See Succession of Burns, 52 La.Ann. 1377, 27 So. 883; Soules v. Soules, 104 La. 796, 29 So. 342; Gilmore v. Gilmore, 137 La. 162, 68 So. 395; Potts v. Potts, 142 La. 906, 77 So. 786. In Soules v. Soules, supra [104 La. 796, 29 So. 343], it was said: "The manual gift of $1,800 made to the son, now defendant, and the decree of collation as relates to this amount, gives rise to the next point of dispute between the brother and sister. We do not understand that defendant's counsel argues that a manual gift is not subject to collation. The proposition pressed in behalf of his

client is that it was a remunerative donation, and, in consequence, not subject to collation. * * *" This court in that case decided that the services were not proved and that the sum of money was not given as a remunerative donation, and affirmed the judgment of the lower court *ordering collation* notwithstanding the fact that the sum of money was a *manual gift*.

The problem before us in this case is extremely difficult, and for its solution a brief review of the history of collation is necessary.

█ Collation is the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such property may be divided together with the other effects of the succession.

Collation had its inception in the Roman law. As pointed out by Domat, "The first use that was made in the Roman law of the collation of goods, and which was the origin of it, was a consequence of the ancient law, which excluded the children that were emancipated from the succession of their fathers, when there were children that were not emancipated. For when afterwards the emancipated children were permitted to share in the succession, they were obliged to bring into the mass of the inheritance, that was to be divided in common among them and their brothers who had remained still under their father's power and authority, that which the emancipated children had acquired from the time of their emancipation. * * *

"In process of time, all the children without distinction, whether they were emancipated or not, having been allowed to enjoy the absolute property in whatever they acquired, * * * this first kind of collation ceased. And the use of the collation was reduced to the goods which the children, whether they were emancipated or not, had acquired by the liberality of the ascendant to whom they were to succeed, together with the other children who had not received the like bounties from the said ascendant." 2 Domat's Civil Law, Strahan's tr. (Cushing's ed.), nos 2944, 2945, pp. 244, 245.

Thus the object and purpose of collation in its beginning was to insure equality among the heirs, and this equality was imposed by the law. The father's wishes in regard to equality or inequality apparently had no place in the first kind of collation because it is not mentioned anywhere that his wishes in the matter were considered by the ancient Romans.

The first kind of collation obtained also in the law of ancient France. See Brissaud, A History of French Private Law, Howell's tr., sec. 483, p. 675. By the second kind of collation the law enforced strict equality also, and in the ancient Customs collation could not be avoided. This strict concept of collation was later modified somewhat so that collation could be dis-

pensed with by the *express will* of the donor. The presumption of equality, however, remained and could be overcome only on the positive, direct, expressed intention of the donor to dispense with collation. See Domat, op. cit. supra, nos 2947, 2964, 2969, pp. 246, 252, 254.

This modern concept of the law of collation was found in the Code Napoleon, thus:

"Every heir, even a beneficiary one, coming to a succession, must collate to his coheirs, what he has received from the deceased, by donation *inter vivos,* directly or indirectly: and he can not retain the donations nor claim the legacies made to him by the deceased, unless the donations and the legacies have been expressly made to him as a preference over his coheirs and besides his portion, or as exempt from collation." Art. 843.

"Even in the case where the donations and legacies have been given as a preference or as exempt from collation, the heir coming to the partition can only retain them up to the disposable portion: the excess is subject to collation." Art. 844.

"The heir who renounces a *succession,* may nevertheless, retain the gift *inter vivos,* or claim the legacy to him made to the extent of the disposable portion." Art. 845.

The redactors of our Code of 1808 had before them the Projet of the Code Napoleon, and incorporated in our Code articles retaining the presumption of equality and

requiring an express declaration of the donor to overcome that presumption. Article 194, Book III, Title I, of that Code provided that the obligation of collating is founded on the equality which must naturally be observed between children who come to the succession of an ascendant and also on the presumption that what was given or bequeathed to children by an ascendant was an advancement of what they could one day expect from his succession. Article 196 provided that things given or bequeathed to children as an advantage over and above the other children should not be collated if the donor has formally expressed his will that what he has thus given was an advantage or extra portion or that it should not be subject to collation. This article also provided that the declaration that the gift is made as an advantage or extra portion may be included in the instrument where such disposition is contained or in a separate instrument, provided that in this last case the instrument be executed before a notary and two witnesses.

These basic rules of collation were retained in the Code of 1825 and in the Revision of 1870, but these Codes contained an article relaxing the proof necessary to establish the express intent of the donor to dispense with collation. Article 1311 of the Code of 1825 provided that the declaration that the gift or legacy is intended as an advantage or extra portion may be made in other equivalent terms, provided

that they indicate in an unequivocal manner that such was the will of the donor.

. Cross on Successions, sec. 310, p. 506, in discussing the basis of collation, has this to say:

"The fundamental basis of the doctrine of collation is simply the presumption of law, that an ancestor intends absolute equality among his descendants in the final distribution of his property; that if he makes a donation to any one of them during his lifetime, it is merely an *avancement d'hoirie* or advance on his hereditary share, to establish him in life, or for some other useful purpose, and that he intends to reëstablish equality among his descendants in the final partition of his estate. Such is collation, nothing more and nothing less; and the whole doctrine consists in formulating rules to ascertain this intention, to define the circumstances wherein the presumption does or does not operate, and to preserve the equality spoken of in the absence of its actual reëstablishment by the ascendant, and in the absence of his express declaration of a contrary intention. In other words, property donated to a descendant is not considered absolutely severed from the estate of the donor until, on final partition, it is determined (1) whether such donation is within the disposable portion; and (2) whether the donor intended it as an absolute donation, or only as an *avancement d'hoirie*. * * * "

■ Finally, then, the law contemplates a perfect equality among heirs and presumes that the ascendant intends equality among his heirs. Our rules of collation have come into existence to maintain and effectuate this equality, and they permit collation to be dispensed with only when the intention of the ascendant to dispense has been manifested expressly and in the manner provided by law. Benoit v. Benoit's Heirs, 8 La. 228; Grandchamps v. Delpeuch, 7 Rob. 429; Berthelot v. Fitch, 44 La.Ann. 503, 10 So. 867; King v. King, 107 La. 437, 31 So. 894; Champagne v. Champagne, 125 La. 408, 51 So. 440; Jung v. Stewart, 190 La. 91, 181 So. 867.

■ The law exempts, however, in Articles 1244 and 1245 of the Code of 1870 certain things from collation. By virtue of this legal exemption an express intention on the part of the donor to dispense with collation of these things is not required. Because this legal exemption may operate to destroy the equality among the heirs, nothing should be exempt from collation unless it falls squarely within the provisions of these articles.

In the instant case there is no doubt that the donation of a large sum of money to one of the heirs destroyed the equality among them. The question presented then is whether this gift of money is clearly exempt by law from collation by virtue of the sole fact that it was a manual gift.

Articles 1244 and 1245 read as follows:

"Art. 1244.—Neither the expenses of board, support, education and apprentice-

ship are subject to collation, nor are marriage presents which do not exceed the disposable portion."

"Art. 1245.—The same rule is established with respect to things given by a father, mother or other ascendant, by their own hands, to one of their children for his pleasure or other use."

Article 1245 exempts from collation things given by a father or mother or other ascendant *by their own hands to one of their children for his pleasure or other use,* and this is the provision on which appellee, the donee in the instant case, relies for her contention that *all manual gifts* are exempt from collation.

Certain things were exempt from collation by Article 852 of the Code Napoleon, which read as follows:

"The expenses of board, support, education, and apprenticeship, the ordinary expenses of accoutrement, those of marriage and customary presents, are not subject to collation."

Under this article of the French Code, the exemptions from collation may be divided into two classes: (1) Those resulting from the obligation of the parent, and (2) those resulting from social customs or usage. Those things exempt in the first class could not even be considered donations as they were by their very nature obligations of the parent, such as support, maintenance, and education of the children. Those things exempt in the second class were things given because of the customs and usage of the time, on special occasions, and under special circumstances which would refute completely that the donor gave them as an advancement of an hereditary share. The basis for the exemption of those things in the first class is made clear by Domat: "The children, or other descendants, succeeding to the inheritance of their father, or mother, or other ascendant, do not bring in that which has been laid out upon their studies, or in other expenses which their education may have required. For these sorts of expenses are what parents are bound to lay out upon their children, and are as it were a debt which they ought to acquit." Domat, op. cit. supra, nᵒ 2963, p. 251. Those of the second class, customary presents, were given on special occasions, such as marriage, New Year's, first communion, and baptism. See Baudry-Lacantinerie et Wahl, Traité théorique et pratique de droit civil, VIII (2ᵉ éd. 1899), Des successions III, nᵒ 2811, p. 273. The French have required that such gifts be in *proportion to the wealth of the donor* to be exempt from collation.

The things exempt from collation in our Code of 1808 were substantially the same as those in the French Code, though our Code was somewhat more liberal in its view of what were usual gifts and was more detailed in its language, thus:

"Art. 207. There exists however one sort of advantage made by ascendants to

their children or lawful descendants, which by their privileged nature, are not subject to collation, though it cannot be said they were not taken out of the mass of the donor's estate.

"Thus pensions, aliments and maintenance supplied to children, and books and other expenses laid out for their education, are not liable to collation, though a library is.

"No collation is due to the wedding clothes and wedding expenses; but the *trousseau* of the daughter is liable to it.

"New year's gifts and small presents, money given to the minor and by him spent and even money given to the son of age, for play and for his pleasures, are not subject to collation."

"Art. 208. But the child is obliged to collate what has been spent to provide him a living or instruct him in some trade or profession or to give him a dowry or marriage portion. * * *"

The redactors of the Code of 1808 evidently recognized that American parents were more generous and liberal with their children, did not confine their giving of presents to special occasions, and often gave money to children for their play and pleasure. The fourth paragraph of our Article 207 contained a deliberate departure from the French view that even a sum of money given to the heir for his small pleasures was subject to collation, because there was nothing habitual about it in France

and it was not imposed by usage. See Baudry-Lacantinerie et Wahl, loc. cit. supra.

The Code of 1808 did not expressly exempt manual gifts from collation, and the language of the articles in that Code does not permit even by implication the interpretation that manual gifts were exempt because of the one fact that they were manual gifts.

Articles 1322 and 1323 of the Code of 1825 contained the exemption provisions of that Code. Since those articles are identical with Articles 1244 and 1245 of our present Civil Code, what we hereafter say as to the provisions of the 1825 Code is pertinent and applicable to the present provisions.

The redactors of the Code of 1825 considered that the articles of the Code of 1808 were too wordy and detailed, and they explained in their projet that they "suppressed these articles to place them in a different order from that which they occupy in the Code [of 1808], and to abridge some dispositions which are too much overloaded with details. Here follow the articles which we have substituted for them [Articles 1322 and 1323 of the Code of 1825]." 1 Louisiana Legal Archives, Projet of the Code of 1825, p. 182.

The redactors themselves, then, did not indicate that they had changed in any way the law relating to things exempt from collation in the Code of 1808. The redac-

tors of the Code of 1825 were men learned in the law, and they were familiar with the term "manual gift", for they mentioned it expressly when they defined it in Article 1526 of that Code. If they had intended to exempt manual gifts as such from collation, they could very easily have made that intention clear. After providing that the expenses of board, etc., are not subject to collation, they undoubtedly would have said simply, in Article 1323, "The same rule is established with respect to manual gifts" instead of saying "The same rule is established with respect to things given by a father, mother or other ascendant, by their own hands, to one of their children for his pleasure or other use". Their express purpose for abridging these dispositions was to improve those overloaded with detail. If such was their purpose, and they intended to exempt manual gifts, why did they overload this disposition by the use of the limiting phrase "for his pleasure or other use"? What possible difference would the purpose of the giving make if manual gifts as such were exempt?

When the redactors used the expression "by their own hands, to one of their children for his pleasure or other use", they were contemplating those things usual for parents of this country to give to a child without thought or regard to his having to account for them to his co-heirs. The word "pleasure" has special significance in this respect because it best describes the motive that usually prompts the giving of such things. The language the redactors chose to describe this kind of giving was broad and elastic enough to keep apace of changes in our social development.

We have concluded, therefore, that it was never the intention and purpose of the redactors of the Code of 1825 to make a drastic change from the provisions of the 1808 Code relating to exemptions or, for that matter, a radical departure from our fundamental concept of collation. Any other conclusion would be inconsistent with the emphasis on equality in the general provisions relating to the nature of collation and the strict rules for maintaining that equality. Legal exemptions from collation have always been based on the soundest grounds—the things exempt were by their nature not really advancements because they were obligations of the parent, or they were things given under such circumstances as to overcome the presumption that they were advancements. The exemption of manual gifts as such cannot be justified under either of these theories, and no consideration comes to our minds which would have prompted the redactors to foster inequality by providing a means—the manual gift—whereby a large portion of an estate could be given to a descendant free of the obligation of collation by virtue of the law.

We want to make it clear that our holding here in respect to exemption of manual

gifts cannot affect those things that are exempt in Article 1244 because they are obligations. The expenditures for board, support, education, etc., are exempt whether they are made in the form of a manual gift or not.

■ Under our interpretation of Article 1245, the money given to the defendant in this case, under an arrangement for a monthly stipend which lasted over 15 years, is not one of those things contemplated by Article 1245, and is therefore not exempt from collation under that article.

The *exemptions from collation* which we have been discussing are provided by law. The donor, however, may provide for *dispensation from collation* of gifts made to his children, although they are not things legally exempt, if his intention so to dispense is clearly expressed in the manner and form provided in the Code. We shall now consider how that intention must be manifested as to a manual gift, and whether the donor in the instant case so manifested her intention.

Under Article 1538 of our Civil Code a donation inter vivos, even of movable effects, will not be valid unless passed before a notary public and two witnesses. A corresponding provision was found in Article 948 of the Code Napoleon, which provided that "No act of donation of movable effects shall be valid, for any other effects than those of which an estimate, signed by the donor and donee, or by those who ac-

cept for him, is annexed to the record of the donation". Thus, under the provisions of both of these articles a donation of movable effects must be in writing and with certain formalities.

Under Article 1232 of our Civil Code it is provided that the declaration that the gift or legacy is made as an advantage or extra portion may be made not only in the instrument where such disposition is contained, but even afterwards by an act passed before a notary and two witnesses. There was a comparable provision in the Code Napoleon, Article 919, as follows: "The declaration that the gift or legacy is made as a preference or extra portion, may be made, either in the instrument where such disposition is contained, or afterwards in the form prescribed for dispositions *inter vivos* or testamentary."

These provisions present the question: Must the dispensation from collation of a manual gift, which is subject to no formality, be made expressly and by the formality of a notarial act, under Article 1232 of the Civil Code? No provision defining the manual gift was in our Code of 1808. It was first defined in the Code of 1825 in Article 1526 (Article 1539 of our present Code). Therefore, we can safely conclude that the formality required by the Code of 1808 for making the declaration that the gift was made as an advantage or extra portion applied only to donations of movable effects made inter vivos under Article 48, Book III, Title II, of that Code, and not

to manual gifts, which were not even recognized in the Code.

Did the redactors of the 1825 Code, who made provisions for the manual gift, intend that a manual gift could be dispensed from collation only by a notarial act under the provisions of Article 1310 (now Article 1232), or did they simply overlook the incongruity that would result from such a requirement of formality when the gift itself was subject to no formality, and omit a necessary provision from our Code?

In an effort to find a solution to this very perplexing problem, we have examined the authorities and commentators of France, where the same problem has arisen. There was no provision for the manual gift in the French Code, but that form of giving was nevertheless recognized in France, and the manual gift was subject to collation.

Baudry-Lacantinerie and Wahl, who consider the problem in the light of the provisions of the French Code, take the view: Dispensation from collation, insofar as it concerns manual gifts, can be tacit, and the judge can infer it from the circumstances of the case. It is difficult to conceive that a donation which can validly be made without an act can be dispensed from collation only by virtue of a declaration inserted in an act. Manual donations are a simple fact; it is the province of the judge to appreciate it and to determine its import. However, the word *expressly* which Article 843 employs necessarily infers a written clause; one ought therefore to think that

Article 843 has envisaged the sole case of a donation made by act; this idea is corroborated by Article 919, according to which the declaration of extra portion must be made by the *act* which contains the disposition. It must be noted, however, that manual gifts have been omitted by the Code; this lack of regulation is a new argument that Article 843 must be disregarded in the question which is under discussion. But it is false that manual gifts are of themselves dispensed from collation. It is the judge who in his sovereign power decides whether the manual gift has been dispensed from collation in the intention of the donor. The proof of the dispensation from collation can result even from witnesses and judicial presumptions. The reason which justifies this solution is that same one on which is founded the doctrine which authorizes here the tacit dispensation from collation—the donee could not procure a writing authorizing the dispensation from collation. Baudry-Lacantinerie et Wahl, op. cit. supra, n° 2789, p. 258.

Others accept this view but at the same time recognize that there are authors who maintain that the manual gift can be excepted from collation only by express declaration. See Planiol et Ripert, Traité, élémentaire de droit civil, III (11° éd. 1937), La succession, Chapitre 1, Des rapports, Donations soumises au rapport, n° 2251, p. 567; Cass. 19 Octobre 1903, Sirey 1904. I. 40 n.1.

The answer to this question for us should be clearly expressed in the Code, but it is not. The solution of the problem may address itself to the Louisiana Law Institute. That body can recommend appropriate action so that our Code will be explicit and clear on the subject.

■ In this case we could solve the problem in one of two ways. First, we could hold that, since the manual gift (for which no form is required) is not exempt by law from collation, its dispensation from collation must be established in the manner and form provided by Article 1232 of our Civil Code, that is, by a declaration that the donation is an advantage or extra portion made in a written act before a notary and two witnesses. Second, we could hold that the donor's intent to dispense collation of a manual gift could be established by the facts and circumstances of the case. Under this latter holding the donee would have the burden of establishing the intent to dispense by strong and convincing proof so as to overcome the presumption of collation, for under our law, where the donor has remained silent, collation is always presumed. Art. 1230, Civil Code.

■ Under either solution appellee cannot prevail, and collation will have to be ordered. There is no declaration by the donor, made in the manner and form provided by law, that the money (manual gift) was given as an advantage or extra portion, nor do the facts and circumstances of

the case constitute proof sufficient to overcome the presumption of collation.

Mrs. Gomez, the donor, died testate, leaving a large estate. This action for collation was brought by children of a predeceased son. At the time the monthly payments were begun to Mrs. Salatich, she had left her mother's home, where she had been living with her children since her first husband's death, to reside elsewhere. The donor gave a like sum to her other daughter, Mrs. Barba, but made no such arrangement as to the surviving children of the predeceased son. Upon Mrs. Barba's death no payments were made to her surviving children, grandchildren of the donor, but the payments to Mrs. Salatich were continued. These payments to her began in 1930 and continued through 1946 and were alleged to have amounted to the sum of $19,200. According to one of the briefs, Mrs. Gomez, the deceased, left the disposable portion of her estate to three of her grandchildren, children of the defendant Mrs. Salatich, plus a particular legacy to one of them. From the fact that the will is not in the record we conclude that there was no provision therein indicating an intent on the part of the deceased to dispense from collation the manual gift to Mrs. Salatich. These facts are not sufficient to show that the donor intended to give the monthly sums to defendant as an extra portion.

■ In briefs filed in this court it is also argued that the donee, Mrs. Salatich, should

be relieved from collation for the reason that these monthly payments were given to her for her support, under the provisions of Article 1244 of the Civil Code that neither the expenses of board, support, education, or apprenticeship are subject to collation. The record does not bear out that Mrs. Gomez made these payments over the years because Mrs. Salatich was in such necessitous circumstances that she required support. Mrs. Salatich in 1931 or 1932 received a considerable sum in a partition of property which she chose to invest in mortgages. There is little else to show her financial circumstances over the period when the sums were given.

For the reasons assigned, it is ordered that the judgment appealed from be reversed and set aside insofar as it rejected the demands of plaintiffs for collation of the total amount of the monthly payments made by the donor, Mrs. William Gomez, to the donee, Mrs. Amelie Gomez Salatich, beginning in the year 1930 through the year 1946. It is now ordered that the defendant, Mrs. Amelie Gomez Salatich, be ordered to collate to the succession of her mother, Mrs. William Gomez, the total amount of these payments. It is further ordered that this cause be remanded to the district court in order that the total amount of such payments may be fixed and determined in accordance with law. In all other respects the judgment appealed from is affirmed.

All costs are to be paid from the mass of the succession.

FOURNET, C. J., absent.