HAWTHORNE, Justice.
 

 Mrs. William Gomez died on June 14, 1949, and was survived by the following forced heirs:
 

 1. One daughter, Mrs. Amelie Gomez Salatich (formerly Mrs. Oriol) ;
 

 2. Three daughters of a predeceased son, Ernest Gomez: Miss Evangeline Gomez, Mrs. Juanita Gomez Boudreaux, and Mrs. Elrita Gomez Glockner, whom we shall hereafter designate as the “Gomez heirs”; and
 

 3. Two daughters of a predeceased daughter, Mrs. Louise Gomez Barba: Mrs. Alice Barba Andressen and Mrs. Amelie Barba Lundin, whom we shall hereafter designate as the “Barba heirs”.
 

 During her life Mrs. Gomez donated $18,-625 to Mrs. Salatich and $7,700 to the mother of the Barba heirs, or a total of $26,325 in donations inter vivos to forced heirs. At her death Mrs. Gomez left a last will and . testament, reading as follows:
 

 “March 24, 1946
 

 “This is my last will. I revoke all previous wills.
 

 “I leave my home 1140 City Park Ave and all its contents to my granddaughter Claire
 
 *1095
 
 Oriol and appoint her executrice [executrix] without bond.
 

 ' “The balance of my disposable portion I leave to my three grandchildren Harold, Claire and Ethel Oriol in equal portions.
 

 “I appoint Clarence Dowling attorney for my executrice.
 

 (signed) “Mrs. Wm. Gomez”
 

 Shortly after the death of Mrs. Gomez the executrix named in the will qualified, and this succession has been under administration ever since. During the course of its administration accounts were filed by the executrix from time to time in which the forced heirs and the legatees were paid large sums of money from this estate, and which were approved and homologated. In due course the testamentary executrix filed her final account, in which she proposed to pay to Clarence Dowling in full settlement of his attorney’s fees the sum of $5,000, and also proposed to distribute the $60,104.12 remaining in her hands.
 
 [1]
 

 The Barba and Gomez heirs opposed the proposed payment by the executrix to Clarence Dowling of a further fee of $5,000 on the ground that he had already been paid from this succession, which had an inventoried value of slightly less than $270,000, the sum of $20,500, and that this additional payment would cause him to receive excessive
 

 and unwarranted attorney’s fees for serv- ' ices rendered to the succession.
 

 These heirs also opposed the final account on the ground that included in the amount to-be distributed was the sum of $26,325 which was the total amount collated by two of the forced heirs. See Succession of Gomez, 223 La. 859, 67 So.2d 156. Opponents argue that, since collation takes place exclusively among forced heirs according to Article 1235 of the Louisiana Civil Code, the legatees are not legally entitled to any portion of the $26,325, and that this amount should be distributed among the forced heirs only, one-third to each branch.
 

 The lower court dismissed this opposition to the final account and ordered it homologated and the funds distributed in accordance therewith. From this judgment the
 
 opponents
 
 have appealed
 
 to this
 
 court.
 

 It is
 
 important and essential
 
 to bear in mind that, in the sum remaining in the executrix’ hands for distribution, not one cent of the amount of the donations to Mrs. Salatich and the Barba branch is included. Opponents would make it appear that the donees have
 
 actually
 
 returned the total amount of these donations to the succession, and that the executrix purposes to distribute two-thirds of this sum to the heirs and one-third to the legatees. This is not true, since the total amount of these dona
 
 *1097
 
 tions forms and constitutes no part of the fund remaining in her hands.
 

 Since none of the forced heirs was named in the will, they come to the succession of the testatrix as claimants of their
 
 legitime
 
 only. The legatees named in the will are the children of Mrs. Salatich, the living daughter of the testatrix, and according to the plain provisions of the will these legatees are to receive the
 
 disposable portion
 
 of the testatrix’ estate including the special legacy to Claire Oriol. Under the provisions of this will it is evident that it was the intention of the testatrix to give to three of her grandchildren all of the property of which she could legally dispose. In other words, it was her clear intention that her forced heirs were to receive
 
 only their legitime, no more and no less.
 

 Under the provisions of Article 1493 of the Civil Code, donations inter vivos or mortis causa cannot exceed one-third of the property of the disposer if he leaves three or more children or their descendants, as is the case here. In order to ascertain what the legatees are to receive under the provisions of this will, we must first determine the legitime of the forced heirs.
 

 Article 1505 of the Civil Code provides:
 

 “To determine the reduction to which the donations, either inter vivos or mortis causa are liable, an aggregate is formed of all the property belonging to the donor or testator' at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor’s decease, in the state in which it was at the period of the donation.
 

 “The sums due by the estate are deducted from this aggregate amount, and the disposable quantum is calculated on the balance, taking into consideration the number of heirs and their qualities of ascendant or descendant, so as to regulate their legitimate portion by the rules above established.”
 

 The executrix in computing the legitime of the three forced heirs and the disposable portion which had been bequeathed to the legatees complied 'with the provisions of this article, as follows:
 

 The aggregate amount of the estate after the payment of all debts was $221,601.65. To this aggregate amount of the estate the executrix fictitiously added the amount of the donations to Mrs. Salatich and the Barba heirs amounting to $26,325, and thus determined that the active mass of this estate amounted to $247,926.65. Since there were three branches of forced heirs, she then concluded that the legitime of the three branches of the forced heirs was two-thirds of this active mass under Article 1493 of the Code, or the sum of $165,284.43, of which they had already received $26,325 in donations inter vivos which were held by this court to be advances on their hereditary share. See Succession of Gomez, supra. Since there
 
 *1099
 
 were three branches of forced heirs, each heir’s share of the legitime was one-third of $165,284.43, or $55,094.81. The executrix then deducted the amount of the legitime from the active mass of the estate and found the disposable portion to be $82,642.22.
 

 As we have previously pointed out, the legatees and the forced heirs have already received large sums from this estate, and these sums, together with the amounts the executrix proposes to pay to each branch of the forced heirs and to the legatees in the final account,' are as follows:
 

 Mrs. Salatich’s Share of Legitime .....................$55,094.81
 

 Paid in previous accounts......... $29,221.68
 

 Proposed payment final account, unopposed ........................ 7,248.14
 

 Advance on legitime by donations inter vivos ........................ 18,625.00
 

 $55,094.82 $55,094.81
 

 Barba Heirs’ Share of Legitime $55,094.81
 

 Paid in previous accounts....... $29,221.68
 

 Proposed payment final account, unopposed ........................ 18,173.14
 

 Advance on legitime by donations inter vivos ........................ 7,700.00
 

 $55,094.82........... $55,094.81
 

 Gomez Heirs’ Share of Legitime............................. $55,094.81
 

 Paid in previous accounts.............. $29,221.68
 

 Proposed payment final account, unopposed ........................ 25,873.17
 

 $55,094.85 $55,094.81
 

 Disposable Portion to Legatees................... $82,642.22
 

 Paid to legatees in previous accounts----$46,776.36
 

 Special legacy (house and contents)..... 27,056.15
 

 Proposed payment final account, ITEM OPPOSED............ 8,809.65
 

 $82,642.16........... $82,642.22
 

 Thus the executrix proposes to pay the of $82,642.16, which is the disposable porforced heirs the sum of $165,284.43, which tion in accordance with her computation is'the amount of their legitime, and she under the'provisions of Articles 1505 and proposes to pay to the legatees the sum 1493 of the Civil Code;
 

 
 *1101
 
 Opponents argue, however, that the executrix erred in computing the legitime and the disposable portion under the provisions of Article 1505. They contend that this article is applicable only when a forced heir is seeking his legitime or a reduction in donations inter vivos or mortis causa, and that, since we are dealing here only with collation, their opposition to the final account should be maintained under the provisions of Article 1235 of the Civil Code. That article provides:
 

 “The obligation of collating is confined to children or descendants succeeding to their fathers and mothers or other ascendants, whether ab intestato or by virtue of a testament.
 

 “Therefore this collation can not be demanded by any other heir, nor even by the legatees or creditors of the succession to which the collation is due.”
 

 Opponents’ argument, in other words, is that the disposable portion in the instant case should be computed on the net estate, that is, on the property left by the deceased at the time of her death after the payment of all debts, that one-third of this net estate only should be paid to the legatees, and that the executrix erred in fictitiously considering the donations made to two branches of the forced heirs in order to compute the legitime and the disposable portion in accordance with Article 1505.
 

 The issues raised in this case, in which the testatrix by her will bequeathed the disposable portion, make it necessary for us to decide by what method the legitime and the disposable portion are to be calculated:
 

 (1) Should the legitime and the disposable portion be calculated, as contended by the executrix, in accordance with the provisions of Article 1505, on the active mass, which is computed by forming an aggregate of the property left by the testatrix at her death and
 
 fictitiously
 
 adding to that aggregate the amount of the donations inter vivos ? Or—
 

 (2) Should the legitime and the disposable portion be calculated, as argued by the opponents, on the net estate?
 
 [2]
 

 The will in the instant case did not give to the legatees one-third of the property of which the testatrix died possessed, or one-third of the property she left at her death. In such a case there would be no doubt that the testatrix intended the legatees to take one-third of her net estate only. However, the will in the instant case gives to the legatees the disposable portion, and in such a case it is equally clear that the testatrix intended that the forced heirs should receive only their legitime, and that the legatees should receive the rest of her property. For the determination of the legitime as well as the disposable portion we must look to- the law, for, as said in
 
 *1103
 
 Miller v. Miller, 105 La. 257, 261, 29 So. 802, 804, “We have to construe his [the testator’s] intention by the light of its [the will’s] general provisions and of the law, of which he is to be presumed to have had knowledge, and' by which he must be presumed to have been guided. We must assume that the testator was aware of the legal rights of his heirs, and the extent of his own power of disposition of his property.”
 

 Let us now consider Articles 1235 and 1505 of our Civil Code for a solution of the problem here presented. As pointed out previously, Article 1505 provides a means of calculation to determine the disposable portion and the legitime, and in providing this method of computation it begins with the words “To determine the reduction to which the donations, either inter vivos or mortis causa are liable * * *.” In view of this language it might appear that this article is only used to determine whether donations are liable to reduction, and should not be used to determine the legitime and the disposable portion where no reduction is sought. If this theory is sound, there might be merit in opponents’ argument that Article 1235 of the Civil Code is controlling, and that the legitime and the disposable portion in a case such as the one we here have under consideration should be determined on the net estate only.
 

 Counsel have cited no case in our jurisprudence on the issue presented in the case at bar, nor has our research uncovered a Louisiana case in point. Both Articles 1235 and 1505 of the Louisiana Civil Code, however, have corresponding articles in the Code Napoleon, Articles 857 (1235 La.C.C.) and 922 (1505 La.C.C.). Moreover, the French courts have passed upon this very question, and the French commentators have discussed it at great length. The Code Napoleon became the law of France in 1804, and until 1826 the courts of that country considered that their Article 857 (our Article 1235) was controlling in a case such as the one at bar, and that the disposable portion should be calculated only on the net estate existing at the death of the donor or testator. This jurisprudence was severely criticized by the French commentators. See Marcadé, op. cit. infra; Duranton, op. cit. infra. In 1826, however, the Court of Cassation, which is the Supreme Court of France, reversed the position which it had previously taken on this issue, and held that, in such a case as the one presently under consideration, both the legitime and the disposable portion should be computed under the provisions of their Article 922 (our Article 1505), although Article 922 also begins with the provision “reduction is determined by forming an aggregate * * * ”, as does our article. Lamothe C. Sabathier, 8 juill. 1826. This decision of the Court of Cassation met with the acclaim and commendation of the commentators. Moreover, it is still controlling in France on the legal point
 
 *1105
 
 at issue in the instant case. See Planiol et Ripert, Traité élémentaire de droit civil (4e éd. 1951), t. 3, n° 2678, p. 842.
 

 The French commentator Marcadé makes the following observations concerning the reconciliation of Article 922 of the Code Napoleon (our Article 1505) with Article 857 of the Code Napoleon (our Article 1235);
 

 For a long time the Court of Cassation followed a theory which constituted a flagrant violation of Article 922 (our Article 1505). Because Article 857 (our Article 1235) provides that collation takes place only between heirs and that legatees have no right to it, the Court of Cassation from this premise reached a strained conclusion: That these same legatees could not include the goods subject to collation in order to find the aggregate mass of the estate and determine the amount of the two parts, the disposable portion and the legitime. Thus, when the father of three children, who had 80,000 francs, had given 20,000 to each as an advance on his inheritance, and in his will left 6,000 or 7,000 to a friend, it was argued that this modest legacy exceeded the disposable portion
 
 [3]
 
 and had to be reduced on the demand of the. children accepting the succession! The legatee, it was argued, cannot profit from collation; therefore, as far as he is concerned, the mass of the estate is only composed of the 20,000 francs existing in the estate at the death of the testator, and therefore he can only receive a quarter of these 20,000 francs, or 5000 francs.
 

 This reasoning, Marcadé continues, arose from an incorrect interpretation of Article 857 (our Article 1235), and resulted in an obvious violation of Article 922 (our Article 1505) which provides for the fictitious reunion of the goods donated inter vivos with the property belonging to the donor or testator at the time of his death, in order to calculate the disposable portion on the aggregate mass of the estate. This reasoning also violates Articles 913-915 (our Articles 1493 ff.) in establishing two legitimes: In the case given above, in effect, it (1) reserved to the children three-quarters of the father’s entire estate, or 60,000 francs; and (2) reserved to them again three-quarters of the remaining quarter (20,000 francs), and left for the disposable portion only the quarter of a quarter, or 5,000 francs on 80,000 francs. Marcadé points out with approval that the Court of Cassation finally abandoned this unsound jurisprudence. Marcadé, Explication théorique et pratique du Code Napoléon (5e éd. 1859), t. 3, n° 598, p. 484.
 

 The French commentator Duranton gives a long and enlightening discussion of this question, the main points of which are:
 

 
 *1107
 
 There are not two disposable portions, one calculated on the active mass of the estate and the other calculated only on the property left at death. There is only one disposable portion, and Article 922 of the Code Napoleon (our Article 1505) provides the method of calculating it. Moreover, Article 922 (our Article 1505), in providing that an aggregate shall be formed of all ihe property belonging to the testator at the time of his death and the property he disposed of by donations inter vivos, makes no distinction between property given inter vivos to a stranger and that given inter vivos to a forced heir.
 

 Duranton then proceeds to summarize the theoretical basis of the classic 1826
 
 [4]
 
 decision by the Court of Cassation as follows:
 

 Article 913 (our Article 1493) sets forth the right of the forced heir or heirs to their legitime, depending on the number of such heirs and their relation to the deceased, and this article also sets forth the right of the donor or testator to dispose freely of the rest of his property by donations inter vivos or mortis causa.
 

 If the fictitious reunion provided for in Article 922 (our Article 1505) were only applicable in a suit for reduction brought by a forced heir, the mass of the succession, and consequently the size of both the legitime and the disposable portion, would vary at the whim of the forced heir, which is an inadmissible result.
 

 The computation of the legitime entails necessarily, and by the very logic of things, the computation of the disposable portion.
 

 Article 857 of the Code Napoleon (our Article 1235) does not prohibit the
 
 fictitious
 
 collation ordered by Article 922 (our Article 1505), and one must not confuse the right to demand
 
 actual
 
 collation in partitions between forced heirs and the right to demand the
 
 fictitious
 
 reunion of property given inter vivos to forced heirs. See Duranton, Cours de droit français (3e éd. 1834), t. 7, nos 292-301, p. 419-440.
 

 The above interpretation of Articles 857 and 922 of the Code Napoleon has been followed in France for over 125 years. We think the reasoning upon which this interpretation is founded is sound and logical and is applicable equally to the corresponding articles of our Code, Articles 1235 and 1505. Under this interpretation the following principles of law are established :
 

 There is only one disposable portion, not two. There is only one legitime, not two. The legitime and the disposable portion are complements of each other, and the total of the two always equals the active mass of the deceased’s estate. In our Civil Code there is only one way to calculate this active mass, and that way is
 
 *1109
 
 set up in Article 1505. Our Code does not provide for any method of computing the disposable portion on the net estate.
 

 The collation of donations provided in Article 1505 is only a fictitious collation made for the purpose of computing the active mass, and has nothing to do with the real or actual collation with which Ar- . tide 1235 is concerned. Article 1235 does not in any way prohibit the
 
 fictitious collation
 
 ordered in Article 1505, but simply provides that
 
 actual collation
 
 is only due by forced heirs to their coheirs, and that it is not due to legatees or creditors. Article 1235 has for its purpose the equalization by actual collation of the portions which the forced heirs receive from the estate of the deceased (excepting, of course, donations inter vivos or mortis causa which have been made by the deceased to a forced heir as an advantage or extra portion).
 

 Let us now consider what the result would be if opponents’ opposition were maintained and the funds remaining in the executrix’ hands distributed in accordance with their claim. As pointed out above, the executrix proposes to pay to the Gomez heirs in cash their share of the legitime, $55,094.85. Mrs. Salatich and the Barba heirs are receiving cash which, with the advance on their legitime made by donations inter vivos to them, will equal the same amount for each of these branches. The item opposed amounts to $8809.65, and, if opponents should prevail, each branch of heirs would receive, in addition to the amount which the executrix proposes to pay to them, one-third of this opposed item, or the sum of $2936.55. For example, the Gomez heirs would receive in cash from this estate the sum of
 
 $58,031.40,
 
 or approximately
 
 $3,000 more than their share of the legitime
 
 as computed under the provisions of Article 1505.
 

 Opponents find no fault with the executrix’ computation of their legitime as two-thirds of the active mass pursuant to Article 1505, nor is there any contention that their legitime has been impinged upon. But they do contend that the provisions of this article should be ignored in computing the disposable portion. As pointed out above, the legitime and the disposable portion are complements of each other and are computed pursuant to Article 1505. In other words, it is completely illogical to say that the disposable portion in one instance is to be computed on the active mass in accordance with Article 1505 and in another only on the net estate. This would be tantamount to saying that there are two legitimes, one computed on the active mass and the other on the net estate. If there were two legitimes, the forced heirs could reserve to themselves out of the active mass formed pursuant to Article 1505 that portion to which they would be entitled under Article 1493 and could reserve to themselves
 
 again
 
 that portion of the net estate reserved to them by that
 
 *1111
 
 article, and thus, as Duranton has so ably pointed out, the size of both the legitime and the disposable portion would depend on the whim of a forced heir.
 

 Opponents argue, however, that the lower court’s judgment is incorrect in that it has the effect of permitting the legatees in the instant case to share in the sums which have been collated by the forced heirs, and that this, in effect, reduces these donations to the prejudice of the forced heirs and in favor of the legatees.
 

 An examination of the method used by the executrix in computing the legitime and the disposable portion, as set out above, clearly shows that there is no merit in this last contention. Opponents have obviously confused actual collation with fictitious collation in making this contention. For example, as already shown, Mrs. Salatich received as donations inter vivos $18,625. As pointed out above, these donations were held by us to be an advance on her hereditary share as they were not given as an extra portion. Succession of Gomez, supra. This means that she had received part of her share of the legitime while her mother was alive and was only entitled to the balance of it from her mother’s estate. Therefore she retained the total amount of the advance on her share of the legitime, and the executrix in addition thereto has paid her the sum of $29,221.68 and proposes to pay her in the final account the additional sum of $7248.14. The same method was followed in paying the Barba heirs their share of the legitime.
 

 It is true, of course, that a legatee of the disposable portion could never sue to reduce a donation made by the testator. However, there is no question of reduction in the instant case. The controlling fact in the present case is that the testatrix at her death left a net estate far in excess of the disposable portion of the active mass of her estate. Moreover, the testatrix in the case at bar had not disposed of any of her disposable portion by donations inter vivos.
 

 For the reasons given above we think the executrix was correct in computing the disposable portion in accordance with the provisions of Article 1505 of the Civil Code, and the judgment of the district court is correct on this point.
 

 We think the judgment of the district court is correct also in dismissing the opposition to the payment of $5,000 additional attorney’s fees to Clarence Dowling. In a succession inventoried at $270,000, attorney’s fees of $25,500 (which will be Mr. Dowling’s total fee from this succession when the $5,000 item on the final account is paid) seem somewhat excessive, and ordinarily we should not hesitate to reduce or disallow this additional "fee. However, this succession has been under administration for over five years, and during this administration the attorney for
 
 *1113
 
 the executrix has been called upon to represent the estate in a good deal of litigation. For instance, he was called on to defend the succession in an accounting suit in which some of the heirs sought judgment against the succession in a sum in excess of $249,000, which resulted in the rendition of a judgment of only $548.72 against the succession. He was also called upon to represent this succession in a partition suit brought by some of the heirs. These services were unusual and not such as an attorney representing a
 

 succession is ordinarily called upon to perform. Since they were rendered under the eyes of the district judge, he was in a better position than we to determine their value. He was of the opinion that the total fee charged by the attorney for this succession was proper and dismissed the opposition. We cannot say that under the facts and circumstances of this case he committed error in so ruling.
 

 For the reasons assigned the judgment appealed from is affirmed. Opponents are to pay all costs of these proceedings.
 

 [1]
 

 . This amount is the sum of $60,000 retained by the executrix under the August 3, 1951, distribution of the Gomez estate, plus $104.12 additional cash received by the executrix after the homologation of the last previous account filed by her.
 

 [2]
 

 . In both instances, of course, the sums due by the estate are deducted before the legitime and the disposable portion are . calculated.
 

 [3]
 

 . Under Article 913 C.N., the disposable portion is one-fourth of the gross estate if there are three or more children.
 

 [4]
 

 . See also
 
 18
 
 fév. 1818.