GLADNEY, Judge.
This appeal presents for review a judgment dismissing the opposition by Mary Belle Robinson Zimmerman to the homolo-gation of the final account filed by the Testamentary Executrix in the Succession of William Hutchinson Robinson.
The deceased died on December 8, 1963 leaving a will dated February 5, 1963. His surviving heirs were a daughter, Kathryn Robinson James, and a granddaughter, Mary Belle Robinson Zimmerman, the sole descendant of William H. Robinson, Jr., a predeceased son of decedent.
The will was probated and Mrs. Mary Belle Flournoy Robinson, the widow and Executrix of the Succession, administered the estate.
The adjusted net estate of decedent was determined to be $203,858. Gifts made by decedent on May 2, 1963 to Mrs. James and Mrs. Zimmerman were valued at $74,-070 and $70,000 respectively. Pursuant to the provisions of Article 1505 of the Louisiana Civil Code the Executrix added to the value of the adjusted net estate the value of the two gifts to determine the active mass of decedent’s estate, and computed same at $347,655. There being two forced heirs, the Executrix, under the provisions of Art. 1493 of the Louisiana Civil Code, correctly found the disposable portion of decedent’s estate to be one-half, or $173,827.50, and the forced portion or legitime of each heir to be $86,913.75.
On July 14, 1967 the Executrix filed the final account of her administration and prayed for its homologation. Therein the Executrix proposed to pay to Mrs. Zimmerman a cash legacy pursuant to Paragraph SIXTH, Subparagraph “a” of the will, the sum of $16,483.83 as the amount necessary to fulfill her legitimate portion.
The testament made certain dispositions which are pertinent. In Paragraph FIFTH the testator bequeathed the residue of his real property in the proportions of three-fourths to Mrs. James and one-fourth to Mrs. Zimmerman. He particularly described the property and with reference to parcels thereof referred to as Tracts IV and Tract V he directed that following his death the two tracts be so partitioned as to result in Mrs. James owning Tract IV in its entirety and Mrs. Zimmerman having full ownership of Tract V. He expressly stated that in effecting the partition it should be carried out between the two heirs without either being required to make the payment of money to equalize the value of the two estates. In Paragraph SIXTH he disposed of the remainder of his personal property by making the following bequests to the two heirs:
“(a) To my granddaughter, MARY BELLE ROBINSON ZIMMERMAN, I will and bequeath cash in an amount which when added to the value of the real estate left to her under Paragraph Fifth above will equal the forced portion of my estate which the law of Louisiana requires that I leave to her as her legi-time. It is my intention for the real estate bequeathed under Paragraph Fifth and the cash bequeathed hereunder, when added together, to equal the said forced portion which the law of Louisiana requires ;
“(b) To my daughter, KATHRYN ROBINSON JAMES, I will and bequeath one-half of the remainder of my *385 personal property, after the legacy to MARY BELLE ROBINSON ZIMMERMAN is satisfied; * * * ”
Approximately three months after the date of his will, on May 2, 1963, Robinson executed two formal Acts of Donation Inter Vivos. In the first of these styled “Exchange of Land and Donation Inter Vivos” he donated to Mrs. James his interest in Tract IV to the end that she received its ownership in its entirety and by a subsequent second donation of the same date he donated his interest in the parcel of land known as Tract V so that Mrs. Zimmerman became the full owner thereof. Each of these donations contained the declaration of the donor that the property so donated was intended as an extra portion “over and above her co-heirs in the settlement of donor's succession.”
The actions of the donor had the effect of partitioning Tracts IV and V, the partition of which he had previously directed in his will to be carried out following his death. We have no doubt that had the donations not been so executed the partition of Tracts IV and V as provided in the will would have taken place and the values thereof imputed to the legitime. However, the declarations of the donor as contained in each of the donations have given rise to this opposition, the basis for which is that the donor intended such gifts to constitute extra portions and that the Executrix erroneously imputed the $70,000 valuation of the donated land to her legitime.
The opposition argues that since the donation to Mrs. Zimmerman was intended as an extra portion, the value of the gift was not subject to collation; that since the aggregate of the two donations does not exceed the disposable portion, Mrs. Zimmerman is entitled to receive the full amount of the legacy bequeathed unto her without imputation of the donation to her legitime; and that accordingly the decision of the court holding to the contrary is repugnant to Civil Code Articles 1228, 1233 and 1501.
The Executrix contends that the only purpose of the extra part declaration in the acts of donation was to avoid the necessity of collation; that Civil Code Articles 1231 and 1501 are not in conflict but involve distinct concepts; that the principal issue herein concerns the intent of the testator as to the manner of properly calculating the cash legacy provided for in the will; and that the action of the Executrix carries out the expressed intention of the Testator as plainly stated in his will. The Executrix, therefore, denies that the language of the donor is sufficient to meet the requirement of Civil Code Article 1501 providing that in order for the disposable portion to be given in whole or in part the donor must expressly declare that the disposition is intended to be over and above the legitimate portion.
The following Civil Code Articles are referred to as having special significance in resolving the questions so presented:
“Art. 1231. But things given or bequeathed to children or other descendants by their ascendants, shall not be collated, if the donor has formally expressed his will that what he thus gave was an advantage or extra part, unless the value of the object given exceed the disposable portion, in which case the excess is subject to collation [reduction].”
“Art. 1232. The declaration that the gift or legacy is made as an. advantage or extra portion, may be made, not only in the instrument where such disposition is contained, but even afterwards by an act passed before a notary and two witnesses.”
“Art. 1233. The declaration that the gift or legacy is intended as an advantage or extra portion, may be made in other equivalent terms, provided they indicate, in an unequivocal manner, that such was the will of the donor.”
“Art. 1501. The disposable quantum may he given in whole or in part, by an act inter vivos or mortis causa, to one *386 or more of the disposer’s children or suc-cessible descendants, to the prejudice of his other children or successible descendants, without its being liable to be brought into the succession by the donee or legatee, provided it be expressly declared by the donor that this disposition is intended to be over and above the legitimate portion.
“This declaration may be made, either by the act containing the disposition, or subsequently by an instrument executed before a notary public, in presence of two witnesses.”
The testator drafted his will so that it reflected with clarity the disposition of his estate, including specific instructions for a partition of Tracts IV and V, after his death. These instructions were of course voided when the two acts of donation inter vivos were effected. Because of the modification of the will the intention of the donor must be determined from the expressed language of the acts of donation. It is our purpose consistent with our succession law to recognize and enforce the intention of the deceased as to the disposition of his estate. Qualifying terms indicative that the gift should be an advance upon donee’s forced portion are noticeably absent in donor’s declaration. Apparently he avoided the use of such phrases as “par preciput” and “en avancement d’hoirie”. As we so construe the language employed by the donor reading “It is understood * * * that the property herein donated is intended as an extra portion for donee over and above her co-heirs in the settlement of donor’s succession”, the donor has evidenced his intention to make the gift as an extra advantage over her coheir and in addition to her legitime, as contemplated in Civil Code Articles 1228, 1231, 1233 and 1501. The provision of Article 1233 dispenses with the requirement that the declaration stipulated in Article 1501 be couched in identical language. The expression need only be written in other equivalent terms provided it indicates in an unequivocal manner that such was the will of the donor.
The Succession of Levy, 172 La. 602, 134 So. 906, 907 (1931) rejected the contention that Civil Code Articles 1233 and 1501 were in conflict, saying:
“With respect to the donor’s declaration of intention, articles 1501 and 1233, Rev. Civ.Code, are controlling. It is suggested that these articles are in conflict. The trial judge found, and we concur in his conclusion, that they are in harmony and should be read together, because they relate to the same subject-matter and have the same general purpose.” [134 So. 906, 907]
When Robinson decided upon the donation he knew what his bequests were in the will, but, notwithstanding, he declared his intention to give as an extra portion, and in so doing used terms which unequivocally indicated that the property should be received by the donee over and above her legitime. We find no way to construe the expression of the testator otherwise. It appears clear and free from ambiguity. When confronted with the question of determining the intention of the testatrix in Darby v. Darby, 118 La. 328, 42 So. 953, Justice Provosty said:
“ * * * we are concerned only with her intention, and such intention is clearly and unmistakably expressed, and it is that defendant should have this property in addition to his share in her succession. Perhaps she made the donation for the very reason that she knew that the advantages received by her other children were not collatable, and that therefore something should be done by her to bring about an equality which was demanded by equity, but not exigible as a matter of legal right.” [42 So. 953, 954-55]
Our research reveals no Louisiana cases which have decided the precise issue here presented. We have been referred to the Succession of Delaune, La.App., 154 So.2d 65 (1st Cir. 1963) and the Succession of *387 Gomez, 226 La. 1092, 78 So.2d 411 (1955). However these cases are not controlling. Both deal primarily with the application of Code Article 1505 to determine the active mass of the succession. In Gomez, however, after denying any conflict between the Civil Code Articles 1235 and 1501 and observing that no extra portion declaration was involved in the case, the court opined that its decision would have been different if the donor had declared the inter vivos donations to her forced heirs were intended as extra portions, stating:
“As pointed out above, these donations were held by us to be an advance on her heredity share as they were not given as an extra portion.” [78 So.2d 411, 418]
Pointing out a paucity of Louisiana jurisprudence interpreting the appropriate articles of the Louisiana Civil Code, counsel for the Executrix urges resort to certain French authorities including two decisions by the French Court of Cassation. The position is taken that these authorities which, of course, are related to the articles of the French Civil Code (Code Napoleon) rule that where a partition is made during the donor’s life among his forced heirs, he is simply giving them what they would otherwise receive at his death, and that such gifts should he imputed first against the forced portion and that when there is an extra part declaration included in such a partition it does not change the rule of imputation hut merely rules out collation or equalization. We have carefully reviewed the cases cited, Aubertot v. Bosonnet, Cass. 9 Dec. 1856, D 57.1.116, Sir. 57.1.444, J. du P. 57.1.903; Lecoufle v. Lemoine, Cass. 19 Nov. 1867, D 68.1.75, J. du P. 67.1.1186, translated copies having been furnished with the brief of the Executrix.
The effect upon us of the persuasiveness of the French decisions or commentaries must be measured by the similarity between the corresponding and related provisions of the two Codes. There are important differences in the texts. Our Civil Codes of 1808, 1825 and 1870, although closely patterned after the Code Napoleon, have undergone material statutory revision. Thus, the Code of 1870 defines collation in Articles 1227 and 1253 whereas the French Code does not. Nor does the latter contain the counterpart of Article 1233. It is disclosed that in Book III, Title I, “Of Successions”, of the Louisiana Revised Code of 1870 thirty-two articles have been inserted which have no counterpart in the Code Napoleon. Also noteworthy is that differences in context appear within certain corresponding articles. An instance of this occurs when we compare the texts of Louisiana Civil Code Article 1231 and Article 844 of the Code Napoleon. Article 1231 reads:
“But things given or bequeathed to children or other descendants by their ascendants, shall not be collated, if the donor has formally expressed his will that what he thus gave was an advantage or extra part, unless the value of the object given exceed the disposable portion, in which case the excess is subject to collation.”
(Emphasis supplied.)
On the other hand, Article 844 of the French Code, which corresponds to Article 1231 of the Louisiana Code, does not contain such mandatory language, but merely provides :
“Even in the case where the donations and legacies have been given as a preference or as exempt from collation, the heir coming to the partition can only retain them up to the disposable portion; the excess is subject to collation.”
With these considerations in mind we are of the opinion the cited French Court decisions should not be accorded great weight even if, arguendo, we concede their analogy to the facts of the instant case. A fortiori, and as stated above, the paramount issue involves ascertaining the donor’s intent which we have found was expressed in the acts of donation in clear and unmistakable lan *388 guage. We must, therefore, hold that the value of the property given to Mrs. Zimmerman should not he imputed to her legi-time but recognized by the Executrix without reduction of the special legacy.
Relying on Civil Code Article 2291 the Executrix has pleaded estoppel by judicial confession predicated on an attestation under oath by Mrs. Zimmerman and Mrs. James affixed to a pleading filed of record on June 26, 1965. It states “that said parties have read and examined the foregoing sworn list of assets and liabilities and computations of legacies and inheritance taxes due thereon and that the same are true and correct and they do concur in the petition of the Executrix and the foregoing Exhibit A.”
Article 2291 provides:
“The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
“It amounts to full proof against him who has made it.
“It can not he divided against him.
“It can not be revoked, unless it be proved to have been made through an error in fact.
“It can not be revoked on a pretense of an error in law.”
The pending opposition was timely presented and attacks the final account filed July 14, 1967. A suspensive appeal from the judgment of the trial court has prevented a distribution of the succession assets, and as a consequence any future adjustments affecting legacies or estate taxes may be accomplished without injury or damage to the Executrix and the estate. We do not believe the resulting inconvenience, if any, should be allowed to deprive the opponent of her day in court. We do not find that the Executrix has been deceived or damaged by the attestation clause subscribed to by Mrs. Zimmerman and, therefore, the estoppel so pleaded is rejected. Janney v. Calmes, 212 La. 756, 33 So.2d 510 (1948); Sanderson, et al. v. Frost, 198 La. 295, 3 So.2d 626 (1941); Tyler v. Walt, et al., 184 La. 659, 167 So. 182 (1936); Farley, et al. v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L.R.A. 1915A, 200, Ann.Cas.1915C, 717 (1913); DeMaupassant v. Clayton, 214 La. 812, 38 So.2d 791 (1949); Thomas v. Leonard Truck Lines, La.App., 7 So.2d 753 (2nd Cir. 1942); Mounger v. Ferrell, La.App., 11 So.2d 56 (2nd Cir. 1942).
The opposition of Mrs. Zimmerman to the final account is maintained and it is ordered that it be amended to reflect Mrs. Zimmerman’s cash legacy in the amount of $86,483.83 subject to adjustment of inheritance and state taxes.
The costs of this appeal are to be paid from the succession funds.
Reversed.