523 So.2d 823 (1988)
SUCCESSION OF Flossie Cecile Navarre FAKIER.
No. 87-C-1877.
Supreme Court of Louisiana.
April 11, 1988.
Rehearing Denied May 12, 1988.
*825 Max Nathan, Jr., Wendy Schornstein Good, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, Jess J. Waguespack, Napoleonville, for applicant.
Marian Mayer Berkett, Deutsch, Kerrigan & Stiles, New Orleans, Alice D. Greenburg, Houma, for respondents.
CALOGERO, Justice.
The issue in this case is whether certain property transferred by the testatrix to her daughters is subject to collation. The property in question includes a diamond ring which the decedent gave to one of her daughters, and five annuity policies purchased by the decedent which named both of her daughters as beneficiaries in the event of her death.
The parties seeking collation of the subject property are grandchildren, the children of testatrix's predeceased son. Under the terms of the will, the grandchildren received only the share of the forced portion reserved for them by law, whereas the daughters were jointly bequeathed their respective shares of the forced portion and the entire disposable portion of the estate.
The trial judge rejected the grandchildren's demand for collation, finding that the diamond ring is not collatable for two reasons: (1) the decedent's inter vivos transfer constituted a manual gift, and (2) the will dispensed with the necessity of collation because it reflected the decedent's intent to favor her daughters to the maximum extent allowed by law. The trial judge also concluded that the annuities are similar to life insurance policies and are not subject to collation because the proceeds of life insurance policies are legally protected from the claims of forced heirs under La. Rev.Stat.Ann. § 22:647 (West 1978 & 1988 Supp.) and La.Civ.Code Ann. art. 1505 (West 1987). Relying on similar reasoning, the court of appeal affirmed. Succession of Fakier, 509 So.2d 33 (La.App. 1st Cir. 1987). We granted a writ to review the judgment of the court of appeal. 513 So.2d 1198 (La.1987).
We now reverse that portion of the court of appeal's judgment which held that the ring is not to be collated. The ring is not exempt from collation simply because it was a manual gift. Nor did the decedent dispense with the necessity of collating the ring in her will, or in any other manner sanctioned by the Louisiana Civil Code. Therefore, the ring is subject to actual collation under the provisions of LSA-C.C. art. 1227, et seq.
The annuities, on the other hand, are not subject to actual collation for the reason that they were not transferred by inter vivos donation. For this reason alone, we affirm the portion of the court of appeal's judgment which held that the annuity proceeds are not collatable.
In so holding, we expressly note that we do not pass upon the issue of whether the value of the annuities should be fictitiously collated for the purpose of calculating the active mass of the succession and the corresponding amount of the legitime under LSA-C.C. art. 1505. Although raised in brief by the grandchildren, that issue *826 was neither presented by the motion filed by them nor directly addressed by the lower courts. Nothing in our opinion today prevents the parties from seeking to adjudicate that issue in the future.
(I) FACTS AND DISPOSITION BY THE COURTS BELOW
Flossie Fakier died on January 7, 1983. She was predeceased by her husband, George Fakier, Sr., as well as by her son, George Fakier, Jr. She was survived by two daughters, Patricia and Mary, and her son's four children.
In 1981, after the death of her husband, Mrs. Fakier executed a statutory will. The will appointed Patricia as executrix of her estate, made certain specific bequests to her granddaughters and left the entire disposable portion of the estate to the two daughters. The testament contained the following explanation of the dispositions made therein:
In explanation of my bequests hereinafter made, I provide the following. It was always my intention and the intention of George C. Fakier, Sr., that our three children would share equally at the time of our deaths, in the estate that we had acquired together during our marriage. George C. Fakier, Sr., had sincerely desired that our son, George C. Fakier, Jr., should have a business in order to support his family. Following the death of George C. Fakier, Sr., and at a time when George C. Fakier, Jr., was terminally ill, my daughters and I executed various documents, wherein George C. Fakier, Jr., and his heirs, were enabled to obtain, in full ownership, the entirety of our family business, George C. Fakier & Son, Inc. At the time of the disposition of the stock held by myself and by my daughters to George C. Fakier, Jr., and to his children, I and my daughters were not fully informed or made aware of the valuations, exact details, consequences and divestitures resulting from the transfer agreements. Accordingly, a significantly less dollar value was received by each of my daughters than they were apparently entitled to. As the direct result, the heirs of my son, George C. Fakier, Jr., have been greatly favored over my daughters by their sole ownership of a business corporation, owning real estate, improvements, and merchandise of great value, both then and now.
As a direct consequence of the lesser and unequal monetary sums received by my daughters in my husband's estate in comparison to the value of the monetary sums and benefits received by my son, George C. Fakier, Jr., and his heirs, as stated in the last preceding paragraph, it is my desire to provide my two daughters with as much property, of whatever nature, movable and immovable, community and separate, including all rights and credits that I may own at the time of my death, to the fullest extent and as may be authorized by law.
More particularly, it is my desire that my two daughters, Patsy Ann and Mary Jude, shall receive, along with the heirs of my son, George C. Fakier, Jr., their respective forced portions. Additionally, it is my express desire that my two daughters, Patsy Ann and Mary Jude, shall receive, in equal parts and share and share alike, the entirety of the disposable portion of my estate which remains after the computation of the forced portion to which each of my daughters and the heirs of George C. Fakier, Jr., shall each legally receive.
After the succession was opened and the will was entered into probate, the executrix filed a detailed descriptive list of the property owned by the decedent at the time of her death. The children of the testatrix's predeceased son (the grandchildren) then filed a "Motion to Traverse Detailed Descriptive List; To Require Collation of Gifts; And to Require Appraisal of Gifts."
In the motion, the grandchildren alleged that the detailed descriptive list omitted "certain collatable gifts of annuity contracts" made by Mrs. Fakier to Patricia and Mary, the total value of said annuities being $301,800. The motion further alleged that the descriptive list omitted another "collatable gift," that being a $10,000 ring that Mrs. Fakier had given to Patricia. *827 Finally, the motion described certain immovable property donated by Flossie to her daughters in 1980.
The motion requested the following relief:
(1) appraisal of the immovable property "so that the disposable portion might be calculated in accordance with C.C. Article 1505";
(2) supplementation of the detailed descriptive list to include the ring and the annuities;
(3) the issuance of an order directing the daughters to "show cause why the items of property (the ring and the annuities) should not be collated."
At the hearing on the motion, testimony was presented only with respect to the annuity contracts.[1] Patricia Fakier testified that after her father died, Mrs. Fakier attempted to purchase life insurance but was unable to do so because of a health problem. As an alternative, she purchased two of the annuity policies in question, naming her daughters as beneficiaries in the event of her death. In addition to these two policies, Mr. Fakier had purchased three policies of life insurance which named Mrs. Fakier as the beneficiary. After her husband's death, Mrs. Fakier exercised her option as beneficiary of the latter policies to convert them into supplemental annuity contracts. These three annuity contracts provided that the proceeds would be received by the two daughters in the event of her death.
The trial judge ruled that neither the ring nor the annuities would be collated. He held that the ring was exempt from collation because it was a manual gift and because the explanatory statement in the decedent's will evidenced her intent to have any inter vivos gift which was made to either of her daughters considered as "an extra portion." Citing La.R.S. 22:647 and LSA-C.C. art. 1505 for the proposition that life insurance policies are exempt from "collation," the trial judge further concluded that under the "distinctive facts" of this case, the annuities have "the same legal status as life insurance policies" and therefore are not collatable.[2]
The court of appeal affirmed. It agreed that the ring was exempt from collation because it was a manual gift. It also reasoned that in light of the fact that Mrs. Fakier's son and her son's heirs had apparently received more than an equal share of her estate by virtue of the earlier transfer of the business, collation of the ring would "defeat the equality among heirs which the rules of collation are designed to protect." 509 So.2d at 34. The court of appeal also agreed with the trial court that Mrs. Fakier intended for the annuities to operate as death benefits, thus giving them "the same practical effect as life insurance." Id. at 35. Emphasizing the importance of the fact that Mrs. Fakier intended to bequeath to her daughters the maximum amount allowable by law, the appellate court concluded that the annuities would not be subject to collation.
(II) DISTINCTION BETWEEN ACTUAL COLLATION AND FICTITIOUS COLATION
The opinions of the court of appeal and the trial court, as well as the motion filed by the plaintiffs to initiate this dispute, refer generically to the term "collation." However, in order to determine the issues which are actually before this Court, as well as the scope of the rulings made by the courts below, it is vital to distinguish between two very different legal concepts, "real" or "actual" collation, and "fictitious" collation. The parties did not draw a clear distinction between these two concepts *828 in the arguments which they presented to the courts below, nor do the opinions rendered by those courts discuss the distinction. As a consequence, there is now disagreement between the parties as to the nature of the issues presented for review by this Court, specifically as to whether we have before us issues involving fictitious collation. Thus, as a prelude to our discussion of the merits of this case, we will review the differences between actual collation and fictitious collation.

(A) Actual Collation

The starting point for any analysis of actual collation is LSA-C.C. art. 1227, which provides as follows:
Art. 1227. Collation, definition
The collation of goods is the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such property may be divided together with the effects of the succession. (Emphasis added).
The obligation of collation described by article 1227 is confined to "children or descendants succeeding to their fathers or mothers or other ascendants, whether ab intestato or by virtue of a testament." LSA-C.C. art. 1235. The obligation to collate is founded upon dual rationales which are stated in article 1229: (1) "the equality which must be naturally observed between children ... who divide among them the succession of their father, mother and other ascendants," and (2) "the presumption that what was given or bequeathed to children by their ascendants was so disposed in advance of what they might one day expect from their succession."
Article 1227 states that the return of goods required of the heir may be "supposed or real." This means that collation may be accomplished in one of two ways: "in kind," by the physical delivery of the donated property into the mass of the succession, or by "taking less," where the donee reduces by the value of the donated property the amount which he would otherwise receive upon the distribution of succession assets. LSA-C.C. arts. 1251-53. With respect to donations of immovable property and cash, the donee generally has the option of taking less or collating in kind. CC. arts. 1255 & 1285. Article 1283 dictates that the donee of movables must collate by taking less.
Article 1230 provides that there is a presumption in favor of the requirement of collation, such that it takes place in every instance "where it has not been expressly forbidden." However, Article 1231 allows the donor to formally dispense with collation, by expressing his intention that the gift was made as an advance on the donee's extra portion. The donor's declaration that the gift was so intended may be made either in the instrument of transfer, in an act passed afterwards before a notary and two witnesses, or in the donor's last will and testament. LSA-C.C. art. 1232.
The type of collation described by the foregoing code articles has been referred to in the jurisprudence as "real" or "actual" collation, because it "has for its purpose the equalization by actual collation of the portions which the forced heirs receive from the estate of the deceased...." Succession of Gomez (Gomez II), 226 La. 1092, 78 So.2d 411, 417 (1955) (emphasis added). The goal of actual collation is "perfect equality among heirs," and the goal is served by the legal presumption that a parent intends for each of his children to inherit an equal portion of his estate. Succession of Gomez (Gomez I), 223 La. 859, 67 So.2d 156, 159 (1953). Therefore, inter vivos donations which an ascendant makes to his descendants must be returned to the succession (either in kind or by taking less) and divided among all of the descendants (unless the decedent dispensed with the necessity for collation in the manner required by Articles 1231-33, or unless the property donated is of a kind that is exempt from collation under Articles 1244-47 & 1250.[3])

*829 (B) Fictitious Collation

While the rules of actual collation are concerned with the equalization of inheritances received by descendants, fictitious collation pertains to an entirely different question, that being the calculation of the legitime of the forced heirs. The legitime, or forced portion, is the portion of the decedent's estate that must be reserved for the forced heirs. LSA-C.C. art. 1495. Depending on the number of forced heirs, the legitime will be either one-fourth or onehalf of the decedent's estate. C.C. art. 1493. The remainder of the decedent's estate is referred to as the "disposable portion," and may be bequeathed to any legatee. See generally L. Oppenheim, Successions and Donations, 10 La. Civil Law Treatise § 161 (1973).
The value of the legitime is, of course, dependent upon the total value, or active mass, of the succession. The active mass of the succession is calculated in the manner set forth by LSA-C.C. art. 1505. Under the provisions of that article, the calculation begins with an aggregation of all the property belonging to the decedent at the time of his death. "[T]o that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor's decease, in the state in which it was at the period of the donation." C.C. art. 1505(A).
The process by which the aggregate value of the decedent's inter vivos donations is added to the aggregate value of the decedent's estate at the time of death, for the purpose of calculating the active mass of the succession (and in turn calculating the value of the legitimeat one-fourth or one-half thereof), has been called fictitious collation. As we noted in Succession of Gomez (II), "[t]he collation of donations provided in Article 1505 is only a fictitious collation made for the purpose of computing the active mass, and has nothing to do with the real or actual collation with which Article 1235 is concerned. 78 So.2d at 417.
Fictitious collation "is a simple paper return to calculate the amount of the legitime and the disposable portion." L. Oppenheim, Successions and Donations, supra, § 35 at 112. Actual collation "is the return in fact to the succession by the descending forced heir of property he has received from the ancestor by donations inter vivos." Id.
There is no provision of law which allows the donor to dispense with the necessity of fictitiously collating any donation. To the contrary, only to the extent that the value of the object given does not exceed the disposable portion may the testator dispense with the necessity of collation for any gift designated as an advantage or extra portion. LSA-C.C. art. 1231. However, C.C. art. 1505 does state that certain sums are not to be included in the active mass of the succession, including, as set forth in C.C. art. 1505(C), "the premiums paid for insurance on the life of the donor" and "the proceeds paid pursuant to such coverage."
If, after the calculation of the active mass of the succession in the manner prescribed by article 1505, it is evident that an inter vivos donation made by the decedent has impinged upon the legitime, i.e., resulted in a situation where there are not enough assets left in the succession at the time of death to satisfy the forced portion, then the forced heirs may bring an action against the donee to reduce any such donation to the extent that it exceeds the disposable portion. See LSA-C.C. arts. 1502, 1504 & 1518.
(III) DETERMINATION OF ISSUES PRESENTED FOR REVIEW
The grandchildren argue that the primary issue presented for review is whether the proceeds of the annuity policies should be fictitiously collated pursuant to article 1505, for the purpose of calculating the *830 legitime, on the other hand, the executrix contends that while she would oppose fictitious collation of the annuity proceeds on the ground that they constitute "insurance on the life of the donor" and consequently are exempt from fictitious collation under article 1505(C), that issue was not raised in the lower courts and therefore is not before this Court. She contends that the only issues raised and adjudicated below concern whether the ring and the annuity proceeds are subject to actual collation. After carefully reviewing the motion filed by the grandchildren, the arguments of counsel at the hearing on the motion and the evidence offered at that hearing, we agree with the executrix.
The motion itself is somewhat ambiguous. The grandchildren sought "collation" of the ring and the annuities, and supplementation of the detailed descriptive list to include the value of those items of property. There was no allegation that the legitime had been impinged, and no request for a reduction of any donation made by the decedent. However, the motion did request that certain immovable property donated by the decedent to her daughters be appraised "so that the disposable portion might be calculated in accordance with C.C. article 1505."
Liberal rules of pleading prevail in Louisiana, and each pleading should be construed so as to perform substantial justice. La.Civ.Code Proc.Ann. art. 865 (West 1984); Haskins v. Clary, 346 So.2d 193, 194 (La. 1977). Thus, we are not prepared to say that the motion filed by the grandchildren was, simply by virtue of its imprecise wording, insufficient to raise the question of whether the annuities should be subject to fictitious collation. Had the parties proceeded to address that issue before the district court, ambiguity in the pleadings would have made no difference. Article 1154 of the Code of Civil Procedure allows the court to consider issues which are not raised by the pleadings, but which are tried by the express or implied consent of the parties.
However, the parties did not expressly address the issues of fictitious collation, legitimate impingement or reduction at the hearing on the motion. Instead, counsel for the grandchildren made clear that his clients were not yet seeking to reduce any inter vivos or mortis causa donation in order to protect the legitime. He stated that an action for reduction might be brought later, "at the time the succession is partitioned."
The executrix argues that the issue of whether the annuities should be fictitiously collated would only be relevant if the grandchildren were alleging that the legitime has been impinged and that as a consequence, donations or bequests must be reduced. Because counsel for the grandchildren stated that no action for reduction was yet being sought, the issue of fictitious collation was not before the court. The executrix also contends that a reduction action would be premature in any event, because all of the inter vivos donations which the decedent made in her lifetime havo not yet been calculated, and it is not yet possible to know whether there has been any impingement on the legitime.
Finally, the executrix contends that in reliance on the representation of opposing counsel that no action for reduction was being sought, she put on evidence before the district court which was limited to the issue of whether the annuities should be subject to actual collation. She suggests that if fictitious collation of the annuities had been at issue, both parties would have presented extensive evidence regarding the similarities and differences between annuities and life insurance policies, evidence which would be pertinent to the issue of whether the annuities are exempt from fictitious collation as "insurance on the life on the donor" under article 1505(C).
A review of the record indicates that counsel for both parties simply made no distinction between fictitious and actual collation in their arguments to the district court, and at times they cited authorities pertinent to both concepts. Perhaps it is for this reason that the decisions of the trial court and the court of appeal did not distinguish between the two concepts and discussed code articles and cases that are *831 pertinent to both actual and fictitious collation.
We were prompted to grant the grandchildren's writ application because it appeared that an important issuewhether annuities are exempt from fictitious collation under article 1505was presented by this case. Upon further review, we find that the issue of whether the annuities should be exempt from fictitious collation was never specifically raised in the lower courts. Also, as pointed out by counsel for the executrix, there is an absence of factual evidence in the record regarding the similarities and differences between life insurance policies and annuities in today's commercial markets, evidence which would be extremely beneficial, if not essential, to an adjudication of the fictitious collation issue. We are unwilling to decide such an important question on less than a complete record.
We conclude that the only issues directly litigated in the courts below, and before us now for review, are whether the grandchildren are entitled to actual collation of the ring and the annuity proceeds. We interpret the scope of the rulings of the courts below to have been limited to those two issues. There being as yet no ruling in the case on the question of whether the annuity proceeds are subject to fictitious collation, the parties are not precluded from raising that issue in the future.
(IV) RESOLUTION OF ISSUES PRESENTED FOR REVIEW
(A) Actual Collation of the Ring
The grandchildren's motion alleges that the decedent made to her daughter Patricia an inter vivos donation of a ring valued at $10,000. At the hearing on the motion, counsel for the grandchildren acknowledged, or stated, that his request for collation of the ring was premature. As a consequence no testimony was taken on that subject. For reasons not clear from the record, the trial court ruled on the issue anyway, holding that the ring is not subject to collation. The court of appeal also addressed the donation of the ring, and affirmed the trial court's finding that the ring is not collatable. Because neither party has ever objected to the fact that the trial court and the court of appeal ruled on this issue, we conclude that they have implicitly consented to its adjudication.[4]
The grandchildren contend that because the decedent executed no instrument dispensing with the requirement that the ring be collated, actual collation must occur. The executrix disagrees, contending that decedent's will is the instrument which dispenses with the requirement of collating the ring.
LSA-Art. 1232 provides that the act which dispenses with collation may be the donor's last will and testament. In order to effectuate a dispensation, it is not necessary for the language of the will to include a direct reference to collation. Article 1231 states that a declaration that the donation was "made as an advantage or extra part" is sufficient. The declaration that the donation was so intended may be made "in other equivalent terms," as long as that intention is set forth "in an unequivocal manner." LSA-C.C. art. 1233.
However, Mrs. Fakier's will does not refer to the transfer of the ring, or to any other inter vivos donations that she may have made to one or more of her children. In order to relieve Patricia from the obligation of collating the ring, in a manner required by the civil code, the testatrix could have (1) made a reference in her will to the transfer of the ring, and indicated by appropriate language that she gave the ring to Patricia as part of the latter's extra portion, or (2) stated generally that all inter vivos gifts to her daughters, or to her children, were intended as advantages.[5] *832 The testatrix chose neither option, and the civil code requirements for dispensation from collation were not met.
The executrix would have us assume that because Mrs. Fakier left the entire disposable portion of her estate to her daughters (minus certain particular legacies), and stated in her testament that she desired to favor her daughters in order to equalize the effect of past advantages to her son, she did not intend for the daughters to collate any inter vivos donations. The trial court and the court of appeal accepted this assumption, reasoning that collation of the ring was contrary to the testatrix's intention.
We reject this assumption for two reasons. First and foremost, the Civil Code sets forth with precision the method by which a donor may dispense with collation, and absent a dispensation sanctioned by the Code, courts are not free to decline to order collation based upon their assumptions about the donor's intentions. To the contrary, "collation is always presumed, where it has not been expressly forbidden," according to C.C. article 1230.
Secondly, the will cannot be considered as a reflection of the testatrix's intentions regarding any inter vivos donations that she made to her daughters, for the simple reason that the will does not mention such donations. The fact that Mrs. Fakier's will expresses the desire for her daughters to inherit the disposable portion does not speak to whether she intended that Patricia would or would not have to collate the value of the ring by taking that amount less when succession assets are distributed.[6] Further, if the testatrix gave the ring to Patricia as an advantage, that advantage would exist not only over the grandchildren, but also over Patricia's sister, Mary. There is no indication in the will that Mrs. Fakier intended to favor Patricia in this fashion.
Nor does the testatrix's expressed desire to have her three children "share equally" in the amount ultimately received from her and her husband, inter vivos and mortis causa, constitute a dispensation from collation. There is no indication in the will that Mrs. Fakier thought that collation of inter vivos gifts would defeat this equal sharing or the "evening up" that she hoped to achieve by bequeathing her daughters the disposable portion.
This case is readily distinguishable from Darby v. Darby, 118 La. 328, 42 So. 953 (1907), where the act of donation specified that the property was donated in order to place the donee on equal footing with other descendants who had received previous advances. We concluded that the language in that act of donation reflected the donor's intention that the donee receive the property described in the act of transfer as an extra portion. In this case, however, there is no document, be it the will or otherwise, which refers at all to the gift of the ring, or which generically exempts from collation inter vivos donations to Patricia. Thus we do not know what the testatrix's intentions were regarding the donation of the ring, and, in light of the presumption in favor of collation required by article 1230, we decline to guess.[7]
Moreover, even if the testatrix had dispensed with actual collation of the ring, the ring's value would have to be added to the succession under principles of fictitious collation. Ultimately fictitious collation *833 must occur here, because the will leaves the daughters the entire disposable portion of her estate, and the only method to determine the amount of the disposable portion is through the fictitious collation procedure outlined in CC. article 1505. See Gomez (II), 78 So.2d at 414-18. Thus the value of the ring would have to be added to the succession one way or the other. It is incongruous to assume that Mrs. Fakier could have intended that the ring given to Patricia during Mrs. Fakier's lifetime should be free of collation because of a favoring provision of a will, when that very provision, the bequest of the disposable portion, creates the legal situation in which fictitious collation of the ring is made imperative.
Certain language in the court of appeal and trial court opinions indicates that the ring should be exempt from collation simply because it is a "manual gift." Civil Code article 1539 defines manual gift as "the giving of corporeal movable effects, accompanied by a real delivery." In support of the proposition that manual gifts are exempt from collation, the lower courts cited LSA-C.C. art. 1245, an article which exempts from collation "things given by a father, mother or other ascendant by their own hands, to one of their children for his pleasure or other use."
In Gomez (I), 67 So.2d 156, we examined in detail the history, purpose and scope of article 1245, and concluded that it does not exempt all manual gifts from collation. We found that when article 1245 speaks of things which parents give to their children "by their own hands," it refers only to "those things usual for parents of this country to give to a child without thought or regard for the child having to account to his coheirs." 67 So.2d at 161. We noted that article 207 of the Louisiana Civil Code of 1808 listed customary parental gifts that were exempt from collation, including "small presents" and money given to a child "for play and for pleasures," and concluded that although the present code contains no such specific examples, article 1245 is intended only to exempt from collation items of this nature. Id.
At issue in Gomez (I) was whether monthly cash stipends given by the decedent to her daughter were exempt from collation under article 1245. We held that the money given to the daughter "is not one of those things contemplated by Article 1245, and therefore is not exempt from collation under that article." Id. at 162. The same may be said here for the diamond ring, which is clearly not the type of customary parental gift to which article 1245 applies.
We noted in Gomez (I) that even if a manual gift is not exempt from collation, the donor may dispense with collation if his intention to do so "is clearly expressed in the manner and form required by the Code." Id. We then discussed the fact that article 1232 requires a formal, written dispensation, executed before a notary and two witnesses, and stated that obviously one way in which the donor of a manual gift could dispense with collation would be through compliance with article 1232. However, because the transfer of a manual gift "is not subject to any formality," CC art. 1539, we also discussed the possibility of allowing the donee to prove that the donor intended to dispense with collation, even when there is no formal dispensation under article 1232:
we could hold that the donor's intent to dispense collation of a manual gift could be established by the facts and circumstances of the case. Under this latter holding the donee would have the burden of establishing the intent to dispense by strong and convincing proof so as to overcome the presumption of collation, for under our law, where the donor has remained silent, collation is always presumed. 67 So.2d at 163.
Because of the facts before the Court in Gomez (I), we did not find it necessary to rule definitively on the question of whether collation of a manual gift may be dispensed with, when the facts and circumstances of the case reveal "strong and convincing proof" that such was the donor's intent.
We have already found here that there was no formal dispensation. As for the facts and circumstances of the case, we *834 have only the decedent's will to consider, there being no testimony presented below that pertained to the donation of the ring. We have noted above that nothing in the will requires the inference that the testatrix intended for the ring to be an extra portion. Certainly the will alone does not constitute "strong and convincing proof" that such was the case.
Even if we were to employ the facts and circumstances test discussed in Gomez (I), the outcome of the case on this issue would be no different. There is no evidence in the record that the decedent intended to give Patricia the ring as an extra portion, and for that reason actual collation must occur.

(B) Actual Collation of the Annuities

The grandchildren concede in brief that the annuities were not transferred to the daughters by virtue of an inter vivos donation. Ownership of the annuities was never transferred by Mrs. Fakier, and the proceeds were payable to her daughters only in the event of her death.
The requirement of actual collation applies only to inter vivos donations. LSA-C.C. arts. 1227 Roach v. Roach, 213 La. 746, 35 So.2d 597 (1948); Jordan v. Filmore, 167 La. 725, 120 So. 275 (1929). Because the annuities were not transferred by virtue of an inter vivos donation, they are not subject to actual collation.
The district court and the court of appeal reached the correct conclusion on this issue, but their analysis of the decedent's intent in purchasing the policies and the purported similarity of the annuities to life insurance was unnecessary. The finding that the annuities were not transferred by inter vivos donation should end the inquiry at this juncture in these succession proceedings. For reasons discussed in Section (III) of this opinion, the question of whether the annuity proceeds are subject to fictitious collation is not before the Court at this time.
LEMMON, J., concurs and assigns reasons.
WATSON, J., concurs in part and dissents in part and will assign reasons.
WATSON, Justice, concurring in part and dissenting in part.
As to the conclusions of the majority regarding the diamond ring, I am in accord and therefore concur.
However, the majority does not treat the issue on which the writ was granted, that is, whether the annuities were part of the succession, or in the alternative, whether they were subject to actual collation or exempt from collation in the manner of life insurance. This is the issue which was decided wrongly, in my opinion, by the court of appeal.
It is not correct that the relators contend only that the annuities are subject to fictitious collation. At page 18 of their brief, the relators argue "they must be included in the Detailed Descriptive List not because they are collatable, but because they are assets that Flossie owned at the time of her death."
The argument would be that there must have been a donation, either inter vivos or mortis causa in a manner prescribed by law, for the decedent to have transferred the property. The unanswered question is: how did the daughters lawfully acquire ownership? The answer may well be that they did not.
Because the majority does not reach this key issue, I respectfully dissent in part.
NOTES
[1] At the hearing, movants' counsel stated that the request for collation of the ring was "premature." Counsel also stated that he did not seek collation of the real estate, but rather desired to have it appraised "in anticipation of an action to reduce or collate at the time the succession is partitioned."
[2] With respect to the immovable property, the trial judge noted that the act of donation specifically stated that the donees were to receive the property as "an extra portion." Thus, the property was not subject to collation. However, the trial court did order that an appraisal of that property be made for inclusion in the legitime calculation. This portion of the trial court's ruling has not been challenged.
[3] Exemptions from collation include the expenses of board, support, education and apprenticeship, as well as marriage presents which do not exceed the disposable portion (art. 1244), things given by a parent or ascendant "by their own hands, to one of their children for his pleasure or other use," (art. 1245), profits which the heir has made from contracts with his ascendant, or from the share of a partnership with the same (arts. 1246 & 1247), and the value of immovable property destroyed while in the possession of the donee and without fault on his part (art. 1250).
[4] The sole issue with regard to the ring is whether it is subject to actual collation. There is no contention that the value of the ring could not be subject to fictitious collation in the event that actual collation is not required. In that case, the value of the ring clearly would be subject to fictitious collation pursuant to article 1505.
[5] The date on which the ring was donated is not stated in the record. However, under Article 1232, a testamentary dispensation from collation, of a general sort, would have been effective for donations made both before and after the date that the will was executed, absent a stipulation to the contrary.
[6] Patricia keeps the ring. The donee of movables (other than cash) "is not permitted to collate them in kind; he is bound to collate for them by taking less...." LSA-C.C. art. 1283. Article 1283 further provides that the amount to be collated in this fashion is the value of the movable at the time of the donation. (But see art. 1505(A), which provides that for the purposes of fictitious collation, the value of the property "at the time of the donor's decease" controls). Apart from the $10,000 figure asserted in the grandchildren's motion, there is no evidence in the record on the value of the ring, and that question will have to be determined in further proceedings before the district court.
[7] On the other hand, Mrs. Fakier did make clear her intentions regarding certain immovable property that she donated to her daughters, stating in the act of donation that said property was intended as "an extra portion."